Guy B. Wallace (SBN 176151)
Mark T. Johnson (SBN 76904)
Travis C. Close (SBN 308673)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
gwallace@schneiderwallace.com
mjohnson@schneiderwallace.com
tclose@schneiderwallace.com

Jinny Kim (SBN 208953)
Alexis Alvarez (SBN 281377)
LEGAL AID AT WORK
180 Montgomery Street, Suite 600
San Francisco, California 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
jkim@legalaidatwork.org
aalvarez@legalaidatwork.org

Shawna L. Parks (SBN 208301)
LAW OFFICE OF SHAWNA L. PARKS
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, California 90027
Telephone: (323) 389-9239
Facsimile:  (323) 389-9239
sparks@parks-law-office.com

Attorneys for Plaintiffs and putative Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT A, BY AND THROUGH PARENT A, HER GUARDIAN; STUDENT B, BY AND THROUGH PARENT B, HIS GUARDIAN; STUDENT C, BY AND THROUGH PARENT C, HIS GUARDIAN; STUDENT D, BY AND THROUGH PARENT D, HER GUARDIAN, STUDENT E BY AND THROUGH PARENT E, HER GUARDIAN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>              PLAINTIFFS,<br>V.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT; VINCENT MATTHEWS, IN HIS OFFICIAL CAPACITY AS THE SUPERINTENDENT FOR THE SAN FRANCISCO UNIFIED SCHOOL DISTRICT,<br>              DEFENDANTS. | Case No. 3:19-cv-03101-WHO<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATIONS OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT, 20 U.S.C. §§ 1400,** *et seq.***; SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794; TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §§ 12131,** *et seq.* |

## **INTRODUCTION**

1. This is a class action civil rights lawsuit, brought under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the Americans with Disabilities Act of 1990 ("ADA") to vindicate the rights of approximately 7,000 children. The lawsuit challenges the entire special education program and Defendants' systemic and ongoing failure to provide students with disabilities with a non-discriminatory and free appropriate public education. Plaintiffs seek a total restructuring of the entire education system as it applies to students with disabilities in San Francisco.

2. Plaintiffs bring this action on behalf of themselves and the thousands of members of the class, defined below, for declaratory and injunctive relief to require Defendants to provide legally-mandated services to schoolchildren with suspected disabilities and disabilities. Defendants have a widespread policy and practice of delaying and/or denying the identification and evaluation of children with disabilities. Even after Defendants conduct an evaluation of a child, they fail to inform either the children or their parents of the range of services and accommodations that are necessary to address the child's disability or disabilities. Instead, Defendants have a policy and practice of offering parents of disabled children a standard set of accommodations and services without regard to whether this standardized approach will provide the services or accommodations that are necessary for the children with disabilities to progress and to receive FAPE. Moreover, with respect to the limited set of services and accommodations that Defendants do offer to provide, Defendants impose arbitrary limits or ceilings on the quantity of those services and accommodations without regard to whether those limitations will allow children with disabilities to progress and to receive a FAPE. In addition, Defendants routinely fail to provide the services and accommodations specified in the IEPs of children with disabilities.

3. Congress enacted Section 504 and the ADA to directly address the discrimination that people with disabilities face in accessing all aspects of public life, such as the public school system. Section 504 and the ADA protect students with disabilities from discrimination, exclusion, unequal treatment, and unequal access to education in public schools. On information and belief, Defendants' violations of the IDEA, Section 504 and the ADA as set forth herein are

FIRST AMENDED CLASS ACTION COMPLAINT
*Student A., et al. v. San Francisco Unified School District*

systemic and widespread and impact thousands of children with disabilities and their families; they are not isolated instances of discrimination.

4.    Defendants' failures are long-standing, willful and egregious violations of civil rights under federal laws that ensure the right to free appropriate public education for students with disabilities.  Defendants' policy, pattern and practice of violating the IDEA, Section 504 and the ADA have resulted in the widespread denial of services and accommodations to children with disabilities in the San Francisco Unified School District ("SFUSD" or "District"), and have a profound negative impact on students with disabilities by denying them a free appropriate public education as mandated by federal disability civil rights law.  As a result of Defendants' wrongful conduct, Plaintiffs and members of the proposed class have suffered and continue to suffer injury, including, but not limited to, the denial of FAPE and the denial of meaningful and equal access to the benefits of a public education program.

5.    This lawsuit seeks an end to this systemic discrimination against students with disabilities.  Plaintiffs have no adequate remedy at law and, unless Defendants are preliminarily and permanently enjoined, Plaintiffs will continue to suffer irreparable harm as a result of the denial of their civil rights under the IDEA, Section 504 and the ADA, and will continue to be denied the services and accommodations that are necessary to and a precondition of receiving a FAPE.  Plaintiffs seek declaratory and injunctive relief as set forth below, including an injunction ordering Defendants to comply with the requirements of the IDEA, Section 504 and the ADA.  Such injunctive relief should include, *inter alia*, an order requiring that Defendants:  (1) reform their deficient policies, procedures and practices for all students with disabilities within the District; (2) require and provide appropriate training for all staff; (3) establish and implement new and effective procedures for identifying and evaluating those students in need of evaluations; (4) establish and implement a policy and procedure for pro-actively communicating to parents of students with disabilities the full range of available accommodations and services that may be effective in ensuring that their children achieve progress within the meaning of applicable law; and (5) cease their policy and practice of imposing arbitrary limits and ceilings on the provision of amounts of certain types of accommodations and services thereby denying FAPE.  In addition,

the named Plaintiffs seek restitution of their uncompensated out-of-pocket expenses for paying for services and accommodations that the District failed and refused to provide in violation of the IDEA, Section 504 and the ADA.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and §§ 1343(a)(3) and (4), as this is an action for injunctive and declaratory relief brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq*., and its implementing federal regulations, 34 C.F.R Part 300; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations, 34 C.F.R. Pt. 104; and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq*., and its implementing regulations, 28 C.F.R. Pt. 35.

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 2201.

8.     The Northern District of California has personal jurisdiction over Defendants.  All of the acts complained of, which gave rise to the claims alleged, occurred in this State and in this District.

9.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

10.     Defendants reside in the Northern District of California and a substantial part of the events or omissions giving rise to this action arose in the City and County of San Francisco, which is located within the Northern District of California.

11.     Members of the Class reside in the Northern District of California.  The Plaintiffs reside in the Northern District of California.

## PARTIES

12.     Plaintiffs are students with disabilities within the meaning of the IDEA, Section 504, and the ADA who have tried to obtain necessary special education and related services from Defendants but have been deprived of access to these services because of Defendants' systemic violations of the IDEA, Section 504 and the ADA.  Defendants have continuously failed and refused to provide Plaintiffs and other similarly situated students with FAPE.

FIRST AMENDED CLASS ACTION COMPLAINT
*Student A., et al. v. San Francisco Unified School District*

13.     Student A:  Plaintiff Student A is a nine-year-old, fourth grade student who attended a SFUSD elementary school.  Student A resides with her guardian, Parent A, in the City and County of San Francisco, California, and comes within the jurisdiction of SFUSD.  Student A has been diagnosed with a specific learning disorder (SLD) in the areas of reading (dyslexia) and math that entitle her to services under IDEA, Section 504, and the ADA.  Student A attended a SFUSD school and may return to SFUSD if Defendants change its policies, procedures and practices so as to bring them into compliance with the requirements of federal and state disability nondiscrimination laws.

14.     Student B:  Plaintiff Student B is an eight-year-old, third grade student at a SFUSD elementary school.  Student B resides with his guardian, Parent B, in the City and County of San Francisco, California, and comes within the jurisdiction of SFUSD.  Student B has been diagnosed with Autism and with a speech or language impairment that entitles him to services under IDEA, Section 504, and the ADA.  At the time of filing, Student B attends a SFUSD school and, as such, is qualified to participate in the programs, services, and activities of SFUSD.

15.     Student C:  Plaintiff Student C is a seven-year-old, second grade student at a SFUSD elementary school.  Student C resides with his guardian, Parent C, in the City and County of San Francisco, California, and comes within the jurisdiction of SFUSD.  Student C has been diagnosed with Autism that entitles him to services under IDEA, Section 504, and the ADA.  At the time of filing, Student C attends a SFUSD school and, as such, is qualified to participate in the programs, services, and activities of the SFUSD.

16.     Student D:  Plaintiff Student D is a twelve-year-old, seventh grade student at a SFUSD charter school.  Student D resides with her guardian, Parent D, in the City and County of San Francisco, California, and comes within the jurisdiction of SFUSD.  Student D has been diagnosed with a SLD in the area of reading (dyslexia) that entitles her to services under IDEA, Section 504, and the ADA.  At the time of filing, Student D attends a public charter school and, as such, is qualified to participate in the programs, services, and activities of the SFUSD.

17.     Student E:  Plaintiff Student E is a nine-year-old fourth grade student in San Francisco.  Student E resides with her guardian, Parent E, in the City and County of San

Francisco, California, and comes within the jurisdiction of SFUSD.  Student E has been diagnosed with a SLD in the area of reading (dyslexia) that entitles her to services under IDEA, Section 504, and the ADA.  At the time of filing, Student E attended a SFUSD school and, as such, was qualified to participate in the programs, services, and activities of the SFUSD.

18.     Each Plaintiff has standing to bring this action to enforce Section 504 pursuant to 29 U.S.C. § 794a(a)(2), which provides that, "[t]he remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance."

19.     Each Plaintiff has standing to bring this action to enforce ADA pursuant to 42 U.S.C. § 12133, which provides that "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

20.     Defendant SFUSD is a government agency responsible for providing school children with full and equal access to the public education programs and activities it offers in compliance with the requirements of federal and state laws and regulations.  Defendant SFUSD is chartered and incorporated under California law and is a recipient of federal financial assistance. Defendant SFUSD's responsibilities include making and implementing educational decisions for the schools within its jurisdiction.

21.     Defendant Vincent Matthews is the Superintendent of SFUSD.  Defendant Matthews is appointed by the Board of Education to implement policies created by the Board of Education and/or mandated by federal and state laws and regulations.  Defendant Matthews is responsible for ensuring that children are provided equal access to public education programs and activities offered by SFUSD.  Defendant Matthews is also responsible for ensuring that all eligible children with disabilities are provided a FAPE, including special education and related aids and services in compliance with federal and state laws and regulations.

22.     Defendant Matthews is an official with policymaking authority over the decisions and conduct that violate the rights of children with disabilities in San Francisco.  On or about July 23, 2018, a demand letter was sent to Defendant Matthews which informed him of SFUSD's

persistent non-compliance of federal disability law.  Defendant Matthews is sued only in his official capacity.

## STATUTORY FRAMEWORK

23.    IDEA, Section 504, and the ADA require that California school districts offer a FAPE to children identified as disabled under those laws.  The ADA requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, such as a school, or be subject to discrimination by such entity.  42 U.S.C. § 12132.

## IDEA

24.    IDEA is a federal grant program administered by the U.S. Department of Education ("DOE").  20 U.S.C. §§ 1400, *et seq*.  States, including California, that receive DOE funds must comply with the mandates contained in IDEA and its implementing regulations.  In turn, school districts must comply with IDEA and meet IDEA-standards established by the state education agency, which in California is the California Department of Education.  20 U.S.C. § 1401(9)(B).

25.    IDEA's primary mandate is the guarantee that "all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).

26.    To carry out this broad mandate, Defendants must have in effect policies, procedures and programs to ensure that all children who are in need of special education and related aids and services are identified, located, evaluated and provided a specially-designed Individualized Education Program ("IEP").  The specific mandates of IDEA require Defendants to:  (1) identify, locate and evaluate every child suspected of having a disability, residing in the district's jurisdiction ("Child Find Duty"); (2) consider data that demonstrate that prior, or as part of the referral process, students were provided appropriate instruction by qualified personnel ("Appropriate Instruction by Qualified Personnel Duty"); (3) comprehensively evaluate students to determine whether they are eligible for special education and related aids and services ("Evaluation Duty"); (4) after determining eligibility, offer and develop an IEP with effective

FIRST AMENDED CLASS ACTION COMPLAINT
*Student A., et al. v. San Francisco Unified School District*

special education and related aids and services, including appropriately intensive research-based interventions ("Special Education Duty"); (5) implement properly prepared IEPs; and (6) monitor the efficacy of the special education and related aids and services provided to students, hold annual IEP meetings and more as needed to review progress and make changes or revisions to IEPs where necessary to ensure FAPE in the least restrictive environment (LRE) ("Monitoring Duty").  20 U.S.C. §§ 1400, *et seq.*; 34 C.F.R. Pt. 300.

## CHILD FIND AND EVALUATION DUTIES

27.     One of the specific mandates of IDEA is that "children with disabilities residing in the State and children with disabilities attending private schools . . . regardless of the severity of their disabilities, and who are in need of special education and related aids and services are identified, located, and evaluated . . . ."  20 U.S.C. § 1412(a)(3)(A).  This is known as the "Child Find Duty."

28.     The Child Find Duty requires school districts to timely identify, locate, and evaluate all children with suspected disabilities.  *Id*. § 1412(a)(3); 34 C.F.R. §§ 300.101(c), .111.  School districts, thus, must fulfill their Child Find obligation; otherwise, a child who has a disability or suspected disability under IDEA will not be identified and accordingly, will not receive appropriate special education.

29.     Once a child is identified under Child Find, school districts must promptly seek parental consent to evaluate him or her for special education, under mandated timeframes, including when the child has not made adequate progress after an appropriate period of time when provided with appropriate instruction.  20 U.S.C. §§ 1414(b)(6); 34 C.F.R. §§ 300.301, 300.309(c).  School districts must evaluate a child who is referred for an evaluation by a parent unless they provide adequate written notice giving their reasons for refusal.  34 C.F.R. § 300.503; Cal. Educ. Code § 56500.4.  IDEA requires school districts to conduct comprehensive "initial evaluations" to "determine whether a child is a child with a disability" and "determine the educational needs of such child."  20 U.S.C. §§ 1414(a)-(c); *see also* 34 C.F.R. § 300.301; Cal. Educ. Code § 56320.  The results of this Evaluation Duty are used to determine the child's

eligibility for special education and related aids and services as well as to make decisions about an appropriate educational program for the child.

30.     IDEA and its regulations establish a comprehensive process by which a child with a disability must be evaluated.  The student's eligibility must be determined and an appropriate program of special education and related aids and services must be developed and implemented. With regard to the Evaluation Duty, a school district must use a variety of assessment strategies to gather relevant information about the child and must assess the child in "all areas related to the suspected disability." 34 C.F.R. §§ 300.304(b)(1), (c)(4).  Among the data to be considered, the Evaluation Duty requires observations by teachers and related service providers; the school district must produce this data at an IEP meeting. *Id.* § 300.305.  The evaluation must contain information from the child's parents and others who interact with the student on a regular basis. 20 U.S.C. §§ 1414 (b)(2)(A), (c)(1)(A).

31.     Within 60 days from the date that the parents provide written consent to an evaluation of their child, school districts must complete the Evaluation Duty and hold an IEP meeting.  Cal. Educ. Code § 56344(a).  School districts must have an IEP in place at the beginning of each school year for every eligible child with a disability in its jurisdiction.  20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a).

32.     The evaluation must encompass all suspected areas of the child's disability.  20 U.S.C. § 1414(a)(3)(B).  Evaluation results are then discussed with parents in an IEP team meeting to determine if the child is eligible for special education.  *Id*. § 1414(a)(4).

## SPECIAL EDUCATION DUTY

33.     Once determined as eligible for special education, a student receives an IEP, developed by his or her IEP team.  20 U.S.C. § 1414.  Among other requirements, an IEP must include a "statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable," or other evidence-based programs, and a statement of modifications and accommodations needed.  *Id*. §§ 1414(d)(1)(A)(i)(IV-VI); 34 C.F.R. § 300.320(a)(4).  Further, to develop an IEP, the student's IEP team must also consider special factors, which include a child's communication needs and

1    "whether the child needs assistive technology devices and services."  20 U.S.C. §§

2    1414(d)(3)(B)(vi)-(v); *see id*. § 1401(1).  In sum, the IEP requirement ensures that Defendants

3    find an educational solution appropriate to the specific needs of the child, given his or her

4    disability and circumstances.

5    **IMPLEMENT PROPERLY PREPARED IEPs**

6        34.    The IEP is the centerpiece of the IDEA's education delivery system for disabled

7    children.  A comprehensive plan prepared by a child's "IEP Team" (which includes teachers,

8    school officials, and the child's parents); an IEP must be drafted in compliance with a detailed set

9    of procedures.  20 U.S.C.S. § 1414(d)(1)(B).  These procedures emphasize collaboration among

10   parents and educators and require careful consideration of the child's individual circumstances.

11   *Id*.  The IEP is the means by which special education and related services are tailored to the

12   unique needs of a particular child.  Yet parents, necessary experts, special education

13   representative or, in the alternative, general education representatives are routinely either

14   excluded or missing.

15       35.    The IDEA requires that every IEP include a statement of the child's present levels

16   of academic achievement and functional performance, describe how the child's disability affects

17   the child's involvement and progress in the general education curriculum, and set out measurable

18   annual goals, including academic and functional goals, along with a description of how the child's

19   progress toward meeting those goals will be gauged.  20 U.S.C. § 1414(d)(1)(A)(i)(I)-(III).  The

20   IEP must also describe the special education and related services that will be provided so that the

21   child may advance appropriately toward attaining the annual goals and be involved in and make

22   progress in the general education curriculum.  20 U.S.C. § 1414(d)(1)(A)(i)(IV).

23       36.    Moreover, an IEP must aim to enable the child to make progress.  After all, the

24   essential function of an IEP is to set out a plan for pursuing academic and functional

25   advancement.  20 U.S.C. § 1414(d)(1)(A)(i)(I)-(IV).  This reflects the broad purpose of the IDEA,

26   an ambitious piece of legislation enacted in response to Congress's perception that a majority of

27   disabled children in the United States were either totally excluded from schools or were sitting

28   idly in regular classrooms awaiting the time when they were old enough to drop out.  *Bd. of Educ.*

1    *v. Rowley*, 458 U. S. 176, 179 (1982) (quoting H. R. Rep. No. 94-332, p. 2 (1975)).  A substantive

2    standard not focused on student progress would do little to remedy the pervasive and tragic

3    academic stagnation that prompted Congress to act.  *Endrew F. v. Douglas Cty. Sch. Dist*. *RE-1*,

4    137 S. Ct. 988, 995-96 (2017).

5                                              **MONITORING DUTY**

6          37.    IDEA mandates that a child with an IEP must have the IEP reviewed "periodically,

7    but not less frequently than annually, to determine whether the annual goals for the child are

8    being achieved."  20 U.S.C. § 1414 (d)(4)(A)(i).  Moreover, where there is a lack of expected

9    progress toward the annual goals and in the general education curriculum, the IEP must be revised

10   to reflect updated goals, strategies, and/or resources.  *Id*. § 1414 (d)(4)(A)(ii)(I).  School districts

11   must regularly inform parents of their child's progress toward the annual IEP goals and their child

12   must be reevaluated at their request and every three years.  *Id*. §§ 1414(a)(2)(A)(ii), (B)(ii).

13                                                **SECTION 504**

14         38.    Section 504 is a federal law that protects individuals with disabilities in programs

15   and activities that receive federal financial assistance.  29 U.S.C. § 794; 34 C.F.R. §§ 104.1, .4.

16   Specifically, Section 504 states that "[n]o otherwise qualified individual with a disability in the

17   United States … shall, solely by reason of her or his disability, be excluded from the participation

18   in, be denied the benefits of, or be subjected to discrimination under any program or activity

19   receiving Federal financial assistance. . . . "  29 U.S.C. § 794(a).  Thus, Section 504 applies to all

20   school districts that receive federal financial assistance, including Defendant SFUSD.  *Id*. §

21   794(b)(2); 34 C.F.R. § 104.31.

22         39.    According to Section 504's implementing regulations, school districts must

23   "designate at least one person to coordinate its efforts to comply with this part."  34 C.F.R. §

24   104.7(a).  School districts must provide "appropriate education" to a "qualified handicapped

25   person."  *Id*. § 104.33.  A student with a disability satisfies the definition of a "qualified

26   handicapped person" if the student "(i) has a physical or mental impairment which substantially

27   limits one or more major life activities [such as learning or reading], (ii) has a record of such an

28   impairment, or (iii) is regarded as having such an impairment."  34 C.F.R. § 104.3(j).

40.     School districts must provide the student who is a "qualified handicapped person" with an "appropriate education," which is defined as "regular or special education and related aids and services that (i) are designed to meet the individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met, and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R.] §§ 104.34, 104.35, and 104.36." *Id.* § 104.33(b)(1).  School districts are required to provide these students with a "free appropriate public education" "regardless of the nature or severity of the person's handicap" and "with persons who are not handicapped to the maximum extent appropriate to the needs of the handicapped person …unless…the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.* §§ 104.33(a), .34(a).1

41.     Before determining placement, school districts must evaluate the student who "needs or is believed to need special education or related services before taking any action" regarding the student's placement in regular education, special education, or any significant change in placement.  *Id.* § 104.35(a).  Once a student has been evaluated, school districts must consider data about the student and make placement decisions using information from a variety of sources, create procedures to ensure that the information obtained is documented and carefully considered, ensure that the placement decision is made by a group of people, including those knowledgeable about the student, the evaluation data, and placement options, and ensure that the student is educated with nondisabled peers to the "maximum extent appropriate" for the student. *Id.* § 104.35(c).  Additionally, Section 504 prohibits school districts from discrimination against students who meet the definition of a "qualified handicapped person."  Specifically:

> [A] recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:  (i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service; (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others; (iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others; (iv) Provide different or separate aid, benefits or services to handicapped persons or to any class of handicapped persons with aid, benefits or services that are as effective as those

provided to others; … or (vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving an aid, benefit, or service.  *Id.* §§ 104.4(b)(1)(i)-(iv), (vii).

42.    The regulations implementing Section 504 further state:

A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same state.

*Id.* § 104.4(b)(4).

43.    For aids, benefits or services to be "equally effective," students who are "qualified handicapped persons" must be given "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."  *Id.* § 104.4(b)(2).

## TITLE II OF THE ADA

44.    Congress enacted the ADA to provide a remedy for "discrimination against individuals with disabilities [which] persists in such critical areas as … education."  42 U.S.C. § 12101(a)(3), (b).  The ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

45.    Title II of the ADA applies to all of the activities of public entities, including school districts that provide public education.

46.    The implementing regulations to ADA define an individual with a disability as follows:  "(a)(1) Disability means, with respect to an individual: (i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) A record of such an impairment; or (iii) Being regarded as having such an impairment . . . ."  *Id*. § 35.108.

47.     The regulations implementing Title II of the ADA state that:

> [a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability . . . (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others; . . . [or] (vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.  *Id*. § 35.130(b)(1)(i), (ii), (iii), (iv), (vii).

48.     Further, "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:

> (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State." *Id*. § 35.130(b)(3).

49.     Title II of the ADA requires that public entities avoid unnecessary policies, practices, criteria or methods of administration that have the effect or tendency of excluding or discriminating against individuals with disabilities.  *Id*. §§ 35.130(b)(3), (8).

50.     Further, "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  *Id*. § 35.130(d). This means "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible."  28 C.F.R. pt. 35, App. B.

1

## STATEMENT OF FACTS

2      51.      According to data from the California Department of Education, there are

3 approximately 55-60,000 students attending San Francisco public schools, depending on the year

4 and scope of enrollment measured.  Published data on special education enrollment shows that the

5 District's enrollment is below national averages, meaning that there are hundreds to thousands of

6 students who need services and accommodations who remain unidentified.  Moreover, data shows

7 that the District both under and over identifies subgroups of students for special education

8 purposes, further resulting in a skewed population that misses significant numbers of students

9 who should qualify for special education.

10      52.      Those students who are enrolled in special education have not fared well in the San

11 Francisco Unified School District based on information published by the California Department

12 of Education.  Based on the most recent 2018 data, 26.5% of students with disabilities failed to

13 receive a standard high school diploma or complete their graduation requirements at an alternative

14 school (versus 11.2% of students in the general population).  Only 14.2% of students with

15 disabilities met college readiness requirements.  Notably, 5.3% of students with disabilities are

16 suspended at least once (versus 1.9% of students in the general population).  More than 20% of

17 students with disabilities are chronically absent, i.e. absent 10% or more of the instructional days

18 they were enrolled, (versus 11.2% of students in the general population).  This number *increased*

19 20% and is more than 5% higher than the state average.  In other words, students with disabilities

20 in this District are not completing their education, being removed from the classroom for behavior

21 more than their peers, and missing school altogether.  Research shows that all of these issues can

22 be correlated to instructional services.

23      53.      Moreover, in 2018, districtwide proficiency scores were unacceptably low:

24 students with disabilities were 88.8 points below the standard in English Language Arts and 101.7

25 points below the standard in Math.  On the CDE's color scheme of blue, green, yellow, orange

26 and red, students with disabilities scored in the orange and red on English Language Arts and

27 Math respectively.  This is in sharp contrast to the performance of students in the general

28 population who scored at essentially the state standard in English Language Arts and Math.  Even

those students taking the California Alternate Assessment, for students with significant cognitive disabilities, fared poorly.  Of those who took this assessment, more than 62% scored the lowest level in Math, Level 1 – Limited Understanding.  In English Language Arts, more than 55% scored in this lowest level.  This means that even on these alternate assessments, designed for students with cognitive deficits, the majority of students are faring poorly.

54.     Further, the CDE has also found that the District has missed performance targets in key special education categories.  The District was found to have failed to meet targets in special education in 4 year graduation rates, falling nearly 20% below the target rate; was found to have failed to meet targets to address disproportionate discipline; and was found to have failed to meet the target for acquisition of skills and knowledge within age range expectations and use of appropriate behaviors in age range expectations.  The CDE also found that the District failed to determine eligibility within 60 days as required by law, missing the target by more than 20 percentage points, and failed to have timely IEPs for children transitioning from early childhood services to regular school age.  Lastly, it failed to meet benchmarks for timely IEPs and timely triennials, also per the CDE's most recent published evaluation of services.

**DEFENDANTS' UNLAWFUL POLICIES AND PRACTICES**

55.     Defendants fail to implement legally compliant policies, procedures and practices with respect to students with disabilities who require services, accommodations and modifications in order to access San Francisco's public education system.  Defendants' widespread policies and practices violate the IDEA, Section 504 and the ADA in at least the following ways:

56.     **Defendants' failure and refusal to properly and timely identify and evaluate students who qualify for special education services**.  Defendants have systematically declined and failed to timely identify, evaluate and provide appropriate interventions and accommodations to students with disabilities.  According to data from the California Department of Education, in the 2017-2018 school year, only 79.62% of children are determined eligible for special education within 60 days of parental consent to evaluation, far less than 100% of children required to be evaluated under federal law.  Defendants have failed to put into effect policies, procedures and programs that ensure that all students with suspected disabilities are timely identified, located,

evaluated and provided appropriate special education and related aids and services, and monitored to ensure FAPE.  For example, Defendants maintain policies and practices that, *inter alia,* actively discourage parents from requesting evaluations or requesting particular services or accommodations, often forcing families to seek private evaluations at their own expense, if they can.  Students with disabilities can only progress through school if they are identified early and provided the necessary, appropriate and required interventions and accommodations.

57.     **Defendants' failure and refusal to offer appropriate special education services needed by students with disabilities**.  Defendants have a widespread policy and practice of offering students with disabilities only a limited selection of potential reasonable accommodations and services, and do not pro-actively disclose to parents and their children the full range of potential reasonable accommodations and services that are available to provide effective educational opportunities and progress to them.  To receive FAPE, students with disabilities typically require special education services, such as appropriately intensive research-based interventions, related services, supplementary aids and services, and curricular accommodations and modifications as provided by law.

58.     Defendants systematically employ blanket policies or practices that set services and delivery by rules or other administrative criteria as opposed to individualized determinations based on the disclosure to the parents and students with disabilities of the full range of potential reasonable accommodations and services that are available to address students' disabilities.  Such discriminatory policies and practices result in a denial of FAPE for thousands of students within the jurisdiction of Defendant San Francisco Unified School District.

59.     Defendants have a systemic policy and practice of using pre-set limits on the number of minutes or amount of time for which a particular type of service or accommodation is provided to students with disabilities.  For example, students with disabilities are arbitrarily limited to a maximum of 30 minutes or 45 minutes of certain types of services without regard to whether such arbitrary limits are sufficient to meet the educational needs of students with disabilities, thus denying FAPE.  Services should be provided based on a student's individual

1  educational needs for services that are sufficient to ensure progress within the meaning of
2  applicable law.

3       60.    Moreover, as a result of Defendants' systemic policy and practice of imposing pre-
4  determined and arbitrary limits on the amount of services and accommodations provided to
5  students with disabilities, parents of students with disabilities are routinely denied their right to
6  meaningfully participate in the development and implementation of the student's IEP and services
7  based on an individual assessment of the amount of accommodations and services that are
8  necessary to provide a FAPE to their children.

9       61.    As well, Defendants have a pervasive policy and practice of rationing services in
10  the areas of literacy and/or reading, occupational therapy, speech and language therapy, physical
11  therapy, and other services in order to comply with arbitrary and unnecessary budget limitations.
12  By doing so, Defendants fail to ensure the provision of related services that a student with a
13  disability may need in order to benefit from their education.  Defendants' deprivation of
14  educational services, through the rationing of specialist services, has a lasting detrimental impact
15  on a student's ability to progress academically.

16       62.    **Defendants' failure and refusal to provide special education services to meet**
17  **the educational needs of students with disabilities.**  Defendants systemically fail to provide
18  staff members who are qualified and trained in meeting the needs of students with disabilities.
19  Defendants' staffing deficiencies are well-known, and are widespread.  Because of Defendants'
20  failure to employ a sufficient number of qualified and trained special education teachers,
21  specialists and paraprofessionals, many students are not receiving the mandatory services set forth
22  in their IEPs.  For example, Defendants routinely fail to provide students with dyslexia with
23  properly trained and qualified reading specialists, and routinely fail to provide qualified and
24  trained paraprofessionals for students with disabilities who need one-to-one aides.

25       63.    Defendants' policy and practice failures—implemented by general education and
26  special education teachers, staff at all levels, and administrators—leave thousands of students,
27  across programs, grades, and schools, with no access whatsoever to Defendants' special education
28  program.

**PLAINTIFF FACTS**

**PLAINTIFF STUDENT A**

64.     Student A is a nine year-old, fourth grade student who attended a public school in San Francisco.  Student A attended this SFUSD elementary school since kindergarten in the 2015-2016 academic year.  Student A has been diagnosed with SLDs in the areas of math, reading (dyslexia) and visual processing.  At all relevant times, she was and is entitled to special education and related aids and services from SFUSD as a resident of the City and County of San Francisco.

65.     Student A has been subjected to discrimination and denial of necessary services and accommodations as a result of, *inter alia*, (a) Defendants' failure and refusal to properly and timely identify and evaluate students who qualify for special education services; (b) Defendants' failure and refusal to offer appropriate special education services needed by students with disabilities including the policy and practice of providing only a limited subset of services and accommodations to students with disabilities despite the fact that other additional services and accommodations are necessary, and/or of arbitrarily limiting or rationing the amounts of such services or accommodations that are offered; and (c) Defendants' policy and practice of failing to provide special education services to meet the educational needs of students with disabilities including the services and accommodations specified in the IEPs of students with disabilities.

66.     Defendants failed to identify and evaluate Student A in a timely and proper manner as required by applicable law, and as set forth below.  Student A always loved books and enjoyed being read to but her parents noticed she lacked interest in pre-reading and writing development.  During the Fall of Student A's first grade year, Student A's parents suspected that their daughter may have a learning disability and requested an evaluation of Student A.  By this time, Student A was identified as reading and writing below grade level and started saying that she does not like reading anymore, called herself "stupid" and began shutting down whenever she had to complete reading assignments.  Student A entered the District in the fall of 2015.  Student A's special education evaluation was completed in January 2017.  As a result of Defendants' failure to timely identify and evaluate her disabilities in a timely and proper manner, during the time between the

fall of 2015 and the first half of 2017, Student A was denied services and accommodations that she needed because of her disabilities and that were necessary to a FAPE.

67.     An initial IEP meeting was held in January 2017 to determine Student A's eligibility for special education and related aids and services.  At this meeting, Student A's IEP team members reviewed her assessments.  The IEP team determined that Student A met the eligibility criteria for a Specific Learning Disability and that she qualified for special education and related aids and services.

68.     Defendants denied Student A services and accommodations that she needed because of her disabilities and that were necessary to a FAPE, as set forth herein.  As specifically stated in her January 2017 IEP, Student A demonstrates an instructional reading level below grade level expectations.  Student A's IEP further stated that she struggles with sensorimotor processing and fine motor skills.  Student A's IEP stated that she would be provided with 90 minutes of literacy intervention per week; 120 minutes per week of paraprofessional support per week to support her writing; 90 minutes per week of math support; and 30 minutes per week of occupational therapy.  Student A was provided with no research-based reading interventions that addressed dyslexia.  Instead, Student A was placed in a Leveled Literacy Intervention program called Fountas and Pinnell, a general reading intervention provided to all students within SFUSD.

69.     In August 2017, Student A was placed in another reading intervention program, S.P.I.R.E.  S.P.I.R.E. is a research-based, multisensory program that would provide Student A with the tools she needed to progress and advance in her reading skills.  Student A utilized the S.P.I.R.E. program for a few months but after Student A's teacher went on leave, SFUSD failed to identify or provide another trained staff member to assist Student A.  In January 2018, SFUSD informed the parents of Student A that Student A would again be offered group work using the Fountas and Pinnell general reading program provided to all students.  During the remainder of 2017, Student A was denied aids and services that were necessary because of her dyslexia.

70.     As a result of SFUSD's denial of the aids and services Student A required because of her dyslexia, Student A's parents were forced to locate and pay for private tutoring for Student

A.  From November 2016 through December 2017, Student A attended 60-minute tutoring sessions in reading, two times per week.

71.     Thereafter in July 2017, Student A attended a literacy program in which the case manager opined that Student A could benefit from individual support in phonics, reading fluency and writing.

72.     In December 2017, Student A's parents decided to obtain and pay for an independent assessment of Student A.  Student A's independent assessment showed that Student A was well below grade level for reading, writing and math.

73.     In January 2018, Student A began attending a private intensive literacy remediation program using Lindamood-Bell, a research-based reading intervention program for children with dyslexia.  Student A has made great progress in her reading skills due to the intensive private reading intervention program using Lindamood-Bell she has been attending.

74.     Student A's January 2018 IEP report stated that Student A demonstrates a Fountas and Pinnell instructional reading level below grade level expectations.  Student A's January 2018 IEP report also states that she demonstrates difficulty with math fluency and writing and that she struggles with sensorimotor processing and fine motor skills.

75.     As set forth herein, Defendants denied Student A services and accommodations that she needed because of her disabilities and that were necessary to a FAPE.  During the January 2018 IEP meeting, the parents of Student A and Defendants could not reach agreement on the goals written into Student A's IEP.  Student A's parents wanted Student A to achieve grade level goals, but Defendants pushed to set goals for Student A that were less than grade level.

76.     Following the January 2018 IEP meeting, SFUSD assigned Student A to a new special education teacher who had no training in working with students with dyslexia and no training on the S.P.I.R.E. program.  This new teacher told Parent A that she had to "Google visual processing disorder."

77.     As a result of Defendants' failure to provide Student A with FAPE, and at significant personal expense, the parents of Student A decided to enroll her in a private school in San Francisco.  However, if SFUSD were to change its policies, procedures and practices so that

1   they comply with the District's legal obligations under federal law, Student A would probably

2   return to SFUSD.

3       78.     Upon information and belief, Student A's experiences are illustrative of and result

4   from the District's unlawful policies and practices as outlined above.

5                              **PLAINTIFF STUDENT B**

6       79.     Student B is an eight-year-old, third grade student at a SFUSD elementary school.

7   Student B has been diagnosed with autism and a speech or language impairment.  Student B

8   previously attended three different SFUSD Pre-K programs.  He is entitled to special education

9   and related aids and services from SFUSD as a resident of the City and County of San Francisco.

10  At all relevant times, Student B has resided within the jurisdiction of SFUSD.

11      80.     Student B has been subjected to discrimination and denial of necessary services and

12  accommodations as a result of, *inter alia*, (a) Defendants' failure and refusal to properly and

13  timely identify and evaluate students who qualify for special education services; (b) Defendants'

14  failure and refusal to offer appropriate special education services needed by students with

15  disabilities including the policy and practice of providing only a limited subset of services and

16  accommodations to students with disabilities despite the fact that other additional services and

17  accommodations are necessary, and/or of arbitrarily limiting or rationing the amounts of such

18  services or accommodations that are offered; and (c) Defendants' policy and practice of failing to

19  provide special education services to meet the educational needs of students with disabilities

20  including the services and accommodations specified in the IEPs of students with disabilities.

21      81.     Defendants failed to timely and properly identify and evaluate Student B with

22  respect to his disabilities, and as a result he was denied services and accommodations that he

23  needed for his disabilities and that were necessary to a FAPE as set forth below.  Student B was

24  diagnosed with autism at the age of two.  From the age of two until he started pre-K at SFUSD,

25  Student B received services, including Applied Behavior Analysis, through Golden Gate Regional

26  Center.  Due to his disability, Student B has delayed speech, sensory processing issues and gross

27  and fine motor issues.

28

82. During Pre-K, Student B received some services from SFUSD such as basic speech therapy and physical therapy. Student B's parents also requested occupational therapy and behavioral services from SFUSD because he was not verbal and was not socializing with the other children. During an IEP meeting, Student B's parents were told that Defendants would not provide occupational therapy and behavioral services for Student B because Defendants did not feel he was eligible. Defendants continue to deny behavioral services, including Applied Behavior Analysis services, for Student B.

83. Defendants denied Student B services and accommodations that he needed because of his disabilities and that were necessary to a FAPE as set forth herein. When Defendants denied Student B behavioral services, the parents of Student B requested one-on-one time with a paraprofessional. Defendants denied this request on the asserted basis that he was not eligible because other services were adequate to address his needs. Because Student B was not provided with a one-on-one paraprofessional, he could not – and still cannot – fully participate in the classroom experience such as group activities and socializing with peers. In addition, a one-on-one paraprofessional would support Student B on tasks such as climbing, manipulation of objects, puzzles, arts and crafts, and assisting with school performances requiring that he simultaneously sing and dance which Student B cannot do independently. Therefore, Student B cannot fully participate on an equal basis as his non-disabled peers as required by applicable law.

84. During the time in which he has been enrolled in SFUSD, Student B has been consistently denied occupational therapy services. Instead, the parents of Student B were told that "PT will take care of it." However, PT and OT are distinct services that address different limitations and problems and are not interchangeable. Student B requires occupational therapy to assist with bilateral coordination and gross motor skills such as jumping, skipping, catching and throwing a ball.

85. Student B's parents had to request an independent educational evaluation ("IEE") in order to obtain occupational therapy. The parents of Student B had to wait months for the IEE because Defendants have a list of "approved vendors" for independent evaluations and unless the provider is on the "approved list," parents have to pre-pay thousands of dollars for the

independent evaluation.  The parents of Student B were required to have six IEP meetings to challenge SFUSD's refusal to provide basic services such as occupational therapy and physical therapy.  During the IEP meetings, District officials asserted that because Student B was doing well academically, he did not need special education and related services.

86.     Defendants have denied Student B a FAPE.  Because Defendants consistently denied occupational therapy services to Student B, the parents of Student B arranged for him to receive private occupational therapy services, at their own expense, beginning in the Spring of 2017.  Student B attends private occupational therapy services once per week which have resulted in a dramatic improvement in Student B's ability to complete basic tasks such as climbing, writing and catching a ball.

87.     As part of Student B's IEP, Defendants were required to provide him with extended school year services.  During the Summer of 2018, Student B was placed at a SFUSD elementary school with other students who receive special education and related services.  Student B was placed in a special day class for children with autism in kindergarten through third grade.

88.     Because Student B's extended school year program grouped students in different grade levels together in a single classroom, Student B regressed academically and started to engage in "baby talk" and infantile language.  During the summer of 2018, Student B did not make any academic progress towards meeting his IEP goals, and, in fact, regressed.

89.     Because of the District's ongoing refusal to provide accommodations regarding socialization and speech services, the parents of Student B, at their own expense, engaged an independent childhood educator to assist Student B with socialization and speech services.  Student B's parents have incurred substantial monetary costs in doing so.  Because the parents of Student B have independently engaged and paid for this outside service, Student B has made gains in both his socialization and speech.

90.     Student B has exhibited social and behavioral problems related to his autism such as rigidity in his behavior, an unwillingness to engage in new activities and non-participation in class or interaction with his peers.  Student B's parents have repeatedly requested services to address these issues, but Defendants have refused to provide autism-specific services.  In refusing

to provide autism-specific services, Defendants have asserted that the resource specialist can provide assistance with socialization and behavior.  However, the resource specialist does not provide socialization or behavior support and Student B continues to experience anxiety, isolation and nervousness, all of which remain unaddressed by Defendants.

91.     Upon information and belief, Student B's experiences are illustrative of and result from the District's unlawful policies and practices as outlined above.

## PLAINTIFF STUDENT C

92.     Student C is a seven year-old, second grade student enrolled at a public school in San Francisco.  Student C has been diagnosed with autism and a speech or language impairment. Student C has attended this SFUSD elementary school since he started kindergarten in the 2017-2018 academic year.  Student C previously attended two different SFUSD Pre-K programs.  He is entitled to special education and related aids and services from SFUSD as a resident of the City and County of San Francisco.  At all relevant times, Student C resided within the jurisdiction of SFUSD.

93.     Student C has been subjected to discrimination and denial of necessary services and accommodations as a result of, *inter alia*, (a) Defendants' failure and refusal to properly and timely identify and evaluate students who qualify for special education services; (b) Defendants' failure and refusal to offer appropriate special education services needed by students with disabilities including the policy and practice of providing only a limited subset of services and accommodations to students with disabilities despite the fact that other additional services and accommodations are necessary, and/or of arbitrarily limiting or rationing the amounts of such services or accommodations that are offered; and (c) Defendants' policy and practice of failing to provide special education services to meet the educational needs of students with disabilities including the services and accommodations specified in the IEPs of students with disabilities.

94.     At the age of 18 months, Student C started receiving speech therapy, occupational therapy, physical therapy and Applied Behavior Analysis through Golden Gate Regional Center.

95.     Defendants failed to identify and evaluate Student C in a timely and proper manner with respect to his disabilities.  As a result, he was denied services and accommodations that he

needed for his disabilities and that were necessary to a FAPE as set forth below.  When Student C turned two and a half years old, Student C's parents asked Defendants for an evaluation of Student C.  Student C tested on the autism spectrum, but SFUSD refused to provide him services based on an autism diagnosis.  Instead, Student C received occupational therapy, physical therapy and speech therapy based only on Student C's diagnosis of a speech or language impairment.  Student C was denied behavioral services and autism-specific services such as Applied Behavioral Analysis therapy.

96.     The parents of Student C were forced to attend three IEP meetings in order to get approved to obtain an IEE to demonstrate to Defendants that Student C was indeed autistic and required special education services.  Student C's parents initially requested an IEE during Summer 2015.  The parents of Student C had to wait until December 2015 for the IEE report and pre-pay thousands of dollars for the independent evaluation.  During this time, Student C was deprived of critical services that he was entitled to and that would have benefitted him, including but not limited to behavioral support such as Applied Behavior Analysis and paraprofessional support.

97.     Defendants have denied Student C a FAPE.  Even after the parents of Student C received the independent diagnosis of autism, Defendants still refused to identify him as autistic, identifying him instead as merely having a "speech delay."

98.     Student C has consistently been denied academic support.  He was unable to write his name until the second-half of kindergarten.  In addition, Student C does not know all the alphabet and can barely count to 10.  On a standardized education test, Student C scored in the bottom 1% in basic reading skills and in the bottom 2% in academic skills.  He lags far behind his peers.  Despite repeated requests by his parents that he receive academic supports in math and language development that are necessary to address these deficiencies, the District has failed and refused to provide these services.  Moreover, the District has denied requests by Student C's parents that he be tested for a suspected learning disability on the purported basis that Student C has not been identified as having a learning disability.  In fact, Student C's parents were told that these issues could not be addressed until Student C enters the third grade, thus denying Student C

1   a FAPE.  If Student C continues to be denied academic support services, he will fall even further

2   behind his peers and will not learn how to read.

3       99.    Student C also had behavioral problems related to his autism including difficulty

4   participating in circle time and completing class projects.  While he receives limited

5   paraprofessional support for part of the day, Student C has not received any autism-specific

6   services, such as Applied Behavior Analysis therapy, to address these issues.  As a result, he

7   continues to experience problems related to attention, project completion and meaningful class

8   participation.

9       100.   The parents of Student C have obtained and pay for private occupational therapy

10  sessions because Defendants refuse to provide more than 30 minutes of occupational therapy per

11  week on the purported basis that 30 minutes is "the standard" and the Least Restrictive

12  Environment for Student C.  Student C's parents have witnessed firsthand the positive effects that

13  the additional occupational therapy sessions have had on Student C's skills and abilities,

14  including  valuable skills such as throwing a ball, holding a pencil and buttoning up a shirt.

15      101.   Upon information and belief, Student C's experiences are illustrative of and result

16  from the District's unlawful policies and practices as outlined above.

17                          **PLAINTIFF STUDENT D**

18      102.   Student D is a twelve year-old, seventh grade student at a public school in San

19  Francisco. Student D has been diagnosed with a SLD in the areas of reading (dyslexia).  Student

20  D previously attended two SFUSD elementary schools.  She is entitled to special education and

21  related aids and services from SFUSD as a resident of the City and County San Francisco.  At all

22  relevant times, Student D resided within the jurisdiction of SFUSD.

23      103.   Student D has been subjected to discrimination and denial of necessary services and

24  accommodations as a result of, *inter alia*, (a) Defendants' failure and refusal to properly and

25  timely identify and evaluate students who qualify for special education services; (b) Defendants'

26  failure and refusal to offer appropriate special education services needed by students with

27  disabilities including the policy and practice of providing only a limited subset of services and

28  accommodations to students with disabilities despite the fact that other additional services and

accommodations are necessary, and/or of arbitrarily limiting or rationing the amounts of such services or accommodations that are offered; and (c) Defendants' policy and practice of failing to provide special education services to meet the educational needs of students with disabilities including the services and accommodations specified in the IEPs of students with disabilities

104.     Defendants failed to timely and properly identify and evaluate Student B with respect to her disabilities, and as a result she was denied services and accommodations that she needed for her disabilities and that were necessary to a FAPE as set forth below. When Student D was in the first grade, she was referred by her teacher to a reading intervention program ("reading club").  Student D was identified as a good candidate for reading club because she was not performing at grade level for reading and writing.  Student D attended reading club twice a week for 20-30 minutes.

105.     By the middle of second grade, Student D's teacher determined that Student D "graduated" from reading club.  Student D's parents were told that Student D had made some progress, would not make additional progress, and would not benefit from reading club any longer.

106.     In the second grade, Student D was also identified as a candidate for both group and one-on-one emotional learning support.  She participated in emotional learning support sessions during which she would meet with the school social worker and discuss her feelings and to relax from the stress of school.  These group and individual emotional support sessions were later discontinued purportedly due to funding issues.

107.     Student D was consistently placed in the lower performing groups academically in school.  Student D's parents were told during parent-teacher conferences that she is "just slower," "a nice kid," and "shy."

108.     Due to a large drop in her confidence and self-esteem resulting from her relatively poor academic performance caused by Defendants' failure to provide the services and accommodations necessary for her disabilities, Student D also started having more difficulties with friendships and often felt alone and isolated.

109.    In November 2017, Student D's parents requested a psychoeducational assessment for Student D's sibling who was subsequently diagnosed with dyslexia.  Because Student D's parents understood that dyslexia is genetic, Student D's parents requested a psychoeducational assessment of Student D in December 2017 to determine eligibility for special education and related services.

110.    In December 2017, Student D started therapy to help with anxiety and low self-esteem and confidence.

111.    In February 2018, Defendants completed an initial psychoeducational assessment of Student D.  Based on the assessment, Student D was determined to meet the eligibility criteria for a Specific Learning Disability.  The psychoeducational report states that Student D demonstrates a normative weakness in academic achievement in reading comprehension, reading fluency, and written expression and that she demonstrates a processing deficit in cognitive abilities.

112.    Defendants have denied Student D a FAPE.  Student D's initial IEP meeting was scheduled in February 2018.  Student D's IEP report states that she requires assistive technology devices and/or services to support fluency, comprehension and written expression needs and goals, including access to AT tools:  audiobooks, Text-to-Speech, Speech-To-Text and word prediction for spelling and writing. Despite the foregoing, no assistive technology services or devices were provided to Student D by SFUSD while she was enrolled at her elementary school.

113.    Since implementing Student D's IEP, Defendants did not meet or consistently work towards the goals written into Student D's IEP report.  For example, Student D did not receive books on tape or recorded books and did not receive a calculation device.

114.    In addition, SFUSD failed to allocate the appropriate time to meet Student D's goals.  The parents of Student D repeatedly had to ask the resource specialist to work with Student D.  On many occasions, the resource specialist had meetings and could not meet with Student D.  When there were field trips, standardized testing or other events, SFUSD did not make up the time for which Student D was required to receive specialized academic instruction.  Student D would have to meet with the resource specialist during lunch so that she could get time with the teacher.

115.    Defendants failed to provide or ensure that Student D's teachers had sufficient training and staff support to implement the services, accommodations and goals written into Student D's IEP.  Rather, Student D's teachers often expected the resource specialist to be primarily responsible for progress towards Student D's goals.

116.    Because of Defendants' failure to provide the required support and services to Student D, the parents of Student D have paid substantial amounts of their own money for private math and reading and writing tutors to ensure that Student D can progress academically and to assist with her anxiety and low self-esteem.

117.    Defendants missed the indicators that Student D had a disability as early as the first grade.  Defendants never referred Student D for an evaluation to determine whether she would qualify for special education and related aids and services.  Due to SFUSD's failure to properly refer Student D for an evaluation, Student D lost many years of special education and related services that would have allowed her to progress academically and socially.  Moreover, Defendants have routinely failed and refused to provide Student D with services and accommodations to which she is entitled and that were necessary to a FAPE.

118.    Upon information and belief, Student D's experiences are illustrative of and result from the District's unlawful policies and practices as outlined above.

## PLAINTIFF STUDENT E

119.    Student E is a nine year-old, fourth grade student in San Francisco.  Student E has been diagnosed with a SLD in the areas of reading (dyslexia).  Student E has attended this SFUSD elementary school since she started kindergarten in the 2015-2016 academic year.  She is entitled to special education and related aids and services from SFUSD as a resident of the City and County San Francisco.  At all relevant times, Student E resided within the jurisdiction of SFUSD.

120.    Student E has been subjected to discrimination and denial of necessary services and accommodations as a result of, *inter alia*, (a) Defendants' failure and refusal to properly and timely identify and evaluate students who qualify for special education services; (b) Defendants' failure and refusal to offer appropriate special education services needed by students with

disabilities including the policy and practice of providing only a limited subset of services and accommodations to students with disabilities despite the fact that other additional services and accommodations are necessary, and/or of arbitrarily limiting or rationing the amounts of such services or accommodations that are offered; and (c) Defendants' policy and practice of failing to provide special education services to meet the educational needs of students with disabilities including the services and accommodations specified in the IEPs of students with disabilities.

121.    Defendants failed to identify and evaluate Student E in a timely and proper manner as required by applicable law, and as set forth below.  In February 2018, Defendants completed an initial psychoeducational assessment of Student E.  Based on the assessment, Student E was determined to meet the eligibility criteria for a Specific Learning Disability.  Student E's disabilities, however, had manifested during the two years prior to her initial assessment including Student E not meeting reading and writing standards and outcomes, challenges with decoding words and being referred to a reading intervention program by her teacher.  Student E was consistently placed in the lower performing groups.  Further, when Student E's parents raised the issue of dyslexia, they were told by District personnel that assessing Student E too early would not show a large enough discrepancy in her educational achievement, that she would not qualify for a SLD, and that Student E would not then be able to be assessed at a later date.  As a result of Defendants' failure to identify and evaluate Student E is a timely and proper manner, she was denied services and accommodations that she needed because of her disabilities and that were necessary to a FAPE.

122.    In January 2019, Student E's IEP report stated that Student E requires Speech to text support to address her dyslexia, which greatly affects her writing speed through spelling errors.  Student E's IEP report required the District to provide 95 minutes per week of reading group, 45 minutes per week of math group, and 30 minutes per week of writing group.  Student E's IEP also required push in and pull out services to support reading, writing and math and that the District provide 65 minutes per week of individual reading support, 35 minutes per week of individual writing support and 30 minutes per week of individual math support.

123.    Defendants have routinely failed to provide the services and accommodations specified in Student E's IEP.  SFUSD failed to allocate the appropriate time to meet Student E's goals.  The parents of Student E repeatedly had to ask the resource specialist to work with Student E.  On many occasions, the resource specialist had meetings and could not meet with Student E.  When there were field trips, standardized testing or other events, SFUSD did not make up the time for which Student E was required to receive specialized academic instruction.

124.    Defendants failed to provide or ensure that Student E's teachers had sufficient training and staff to implement the services, accommodations and goals written into her IEP.  Rather, Student E's teachers often expected the resource specialist to progress towards Student E's goals.

125.    Based on assessments completed by the resource specialist, Student E was placed in a group that was below Student E's curriculum level.  However, when the parents of Student E inquired about moving her to a different group that was in line with Student E's academic performance and the school's own assessments, they were told that it was not "convenient" to move her to a different group, and she continued in a group that was below her level for several months until it was convenient to move her to another group which was consistent with her assessments and abilities.

126.    Defendants have denied Student E a FAPE as set forth herein.  Because SFUSD has not implemented the specialized academic instruction time, services and accommodations stated in Student E's IEP report, the parents of Student E have been forced to pay out of their own funds for private, outside support in order to give Student E an opportunity to progress academically.

127.    Upon information and belief, Student E's experiences are illustrative of and result from the District's unlawful policies and practices as outlined above.

///

///

///

///

1

## CLASS ALLEGATIONS

2   128.   The named Plaintiffs bring this action on behalf of themselves and all persons

3   similarly situated and seek class certification pursuant to Federal Rule of Civil Procedure 23(b)(2)

4   as set forth below.

5   129.   **Class Definition.**  Plaintiffs seek to represent the following class:  All students

6   within the jurisdiction of San Francisco Unified School District who have or may have disabilities

7   and who have been or will be subject to the District's policies and procedures regarding the

8   identification and evaluation of students with disabilities and the provision of services and/or

9   accommodations to such students under the Individuals with Disabilities Education Act, Section

10   504 of the Rehabilitation Act of 1973 and/or Title II of the Americans with Disabilities Act of

11   1990 during the class period.

12   130.   The class period is defined as commencing two years prior to the filing of this

13   action through the present.

14   131.   Excluded from the above-referenced class are any judges assigned to hear this case

15   (or any spouse or family member of any assigned judge).

16   132.   **Impracticability of Joinder (Numerosity of the Class).**  The members of the

17   proposed class are so numerous that joinder of all such persons is impracticable and the

18   disposition of their claims in a class action is a benefit both to the parties and to this Court.

19   Defendants' own records and information show that the class consists of approximately 7,000

20   students who reside in San Francisco.  Accordingly, Defendants' policies and practices regarding

21   students with disabilities impact thousands of current and future students.

22   133.   **Questions of Fact and Law Common to the Class.**  All members of the class have

23   been and continue to be denied their civil rights because of the violations of the IDEA, Section

24   504 and/or the ADA alleged herein.  There are questions of law and fact common to the class

25   defined above, namely with Defendants' policies, procedures and practices regarding the

26   identification, evaluation, eligibility determination, provision of special education and related

27   services, and monitoring of student progress to determine effectiveness of services provided and

28   need for further evaluation and/or revision to their IEPs or 504 Plans, violate IDEA, Section 504

1    and the ADA.  Questions of law and fact common to the class include, but are not limited to, the

2    following:

3          a.   Whether Defendants' policies, procedures and practices regarding the

4               identification and evaluation of students with disabilities complies with the

5               requirements of the IDEA, Section 504 and/or the ADA;

6          b.   Whether Defendants' policy and practice of rationing specialist services needed

7               by students with disabilities complies with the requirements of the IDEA,

8               Section 504 and/or the ADA;

9          c.   Whether Defendants' policy and practice of providing a one-size-fits-all or

10               limited "menu" of accommodations or services to students with disabilities

11               complies with the requirements of the IDEA, Section 504 and/or the ADA;

12          d.   Whether Defendants' policy and practice of imposing arbitrary across-the-board

13               limits or ceilings on the amount of particular types of services or

14               accommodations provided to students with disabilities without regard for the

15               need for such services and accommodations by the class members complies with

16               the requirements of the IDEA, Section 504 and/or the ADA;

17          e.   Whether Defendants' policy and practice of failing and refusing to commit

18               sufficient financial and personnel resources to its special education program to

19               meet the aggregate needs of the class members for such services and

20               accommodations complies with the requirements of the IDEA, Section 504

21               and/or the ADA;

22           f.   Whether Defendants, by their actions and omissions alleged herein, have

23               engaged in a policy, pattern and/or practice of discrimination against Plaintiffs

24               and the putative class members in violation of the IDEA, Section 504 and/or the

25               ADA;

26          g.   Whether the Plaintiffs and the putative class members have been injured; and

27          h.   Whether the Plaintiffs and the members of the putative class are entitled to

28               declaratory and/or injunctive relief, and the nature of such relief.

134.    **Typicality.**  The claims of the named Plaintiffs are typical of those of the proposed class.  Each of the named Plaintiffs is an individual with a disability that qualifies him or her as eligible for special education and related services under IDEA, Section 504 and/or the ADA. Further, Plaintiffs have been and are being denied their right to a FAPE by Defendants.  Plaintiffs' claims are typical of the claims of the proposed class in the following ways:  1) Plaintiffs are members of the proposed class; 2) Plaintiffs' claims arise from the same policies, procedures, practices and course of conduct on the part of Defendants; 3) Plaintiffs' claims are based on the same legal and remedial theories as those of the proposed class and involve similar factual circumstances; 4) the injuries suffered by the named Plaintiffs are similar to the injuries suffered by the proposed class members; and 5) the relief sought herein will benefit the named Plaintiffs and all class members alike.

135.    **Adequacy.**  The named Plaintiffs will fairly and adequately represent the interests of the class.  They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

136.    **The Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted and refused to act on grounds generally applicable to the class, making the declaratory and injunctive relief sought on behalf of the class as a whole appropriate.

## ADMINISTRATIVE EXHAUSTION

137.    Plaintiffs should be excused from exhausting their educational due process administrative remedies under the doctrine of futility.  Any attempts to exhaust administrative remedies would result in irreparable injury and delay that could be prevented by immediate judicial relief.

138.    Exhaustion through individual due process claims should be excused as futile because the harms that the individual Plaintiffs allege and the remedies they seek are systemic, will require structural reforms throughout the District and impact both the named Plaintiffs and all of the putative class members.  Systemic deficiencies are not capable of review in a particular student's due process claim, nor is systemic relief available as a remedy in such a case.  The Office

of Administrative Hearings, the agency that hears due process claims under IDEA in California, has repeatedly held that it does not have jurisdiction over systemic claims, systemic relief or class actions. Thus, any effort to exhaust for the individual Plaintiffs would be futile.

139.    Exhaustion through individual due process claims should be excused as futile because Defendants have adopted policies and practices contrary to law.

140.    Exhaustion through individual due process claims should be excused as futile because the severity of Defendants' violations threaten basic statutory goals in that Defendants' policies, practices and procedures systematically shut children with disabilities out of the special education system, and prevent students from accessing any special education services, supports, or accommodations

141.    Exhaustion through individual due process claims should be excused as futile because due process hearing officers are not authorized to adjudicate questions of statutory compliance.

142.    Exhaustion through individual due process claims should be excused as futile because ADA and Section 504 claims do not require exhaustion of administrative remedies. In addition, the Office of Administrative Hearings has repeatedly held that it does not have jurisdiction over ADA and Section 504 claims.

143.    The state complaint procedure run by the California Department of Education ("CDE") will be no more fruitful in yielding meaningful results for Plaintiffs as it is both legally not required, and also practically ineffective, particularly on systemic claims.

144.    The Ninth Circuit has held that while the state complaint procedure may in some cases substitute for a due process hearing, those types of complaints are not a prerequisite to filing suit. *Porter v. Board of Trustees of Manhattan Beach,* 307 F.3d 1064 (9th Cir. 2002). Moreover, as the Ninth Circuit identified, the only remedy directly available against a non-complying school district through the complaint procedure is for the *state* to bring suit. *Id.* at 1072. In addition, however, the state complaint procedure is not effective, even for issues far narrower than those presented in this case. For example, in *Student A. v. Berkeley Unified Sch. Dist.,* 2017 WL

4551514 at *3-4 (N.D. Cal. Oct. 12, 2017), the plaintiffs attempted state complaints and alleged that they were ignored or rejected by the state.  In *Christopher S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1213 (9th Cir. 2004), the CDE accepted the school district's proposed resolution without question, despite the fact that it was facially flawed.  Similarly, in *Everett H. v. Dry Creek Joint Elementary Sch. Dist.,* 2016 WL 5661775, at *9 (E.D. Cal. Sept. 29, 2016), the plaintiff alleged that the CDE refused to investigate his state complaint.  *Morgan Hill Concerned Parents Assoc. v. California Dep't of Educ.*, 2013 WL 1326301, at *11 (E.D. Cal. Mar. 29, 2013), alleges that the CDE systemically fails to investigate these claims, and instead simply accepts assurances from the districts that complaints are baseless.  Finally, while not directly commenting on the state complaint procedure, the district court judge overseeing the consent decree governing CDE in *Emma C. v. Thurmond,* Case No. 96-CV-04179-VC, recently found that the state's analysis of monitoring data was "riddled with serious defects," and that "the defects in the current system [of data analysis] are so serious, and so numerous, that they significantly interfere with California's ability to monitor how school districts are serving disabled children." (N.D. Cal. July 5, 2019, Order re State's Compliance at Phase 2).

## LEGAL CLAIMS
### First Claim for Relief
### Violations of the IDEA, U.S.C. §§ 1400, *et seq.*
### 34 C.F.R. Pt. 300
### (On Behalf of All Plaintiffs, Class Members)

145.    Plaintiffs incorporate the preceding paragraphs of this Complaint as if set forth in full herein.

146.    IDEA mandates that students with disabilities, between ages 3 and 21, have access to a FAPE.  20 U.S.C. § 1412(a)(1)(A).  Students with suspected disabilities are entitled to a full and individual evaluation under IDEA.  *Id*. § 1412(a)(7), 20 U.S.C. §§ 1414(a)- (b).  Upon evaluation and determination of eligibility for special education and related services, IDEA mandates the development and subsequent monitoring of a specially designed IEP to ensure that appropriate educational services, including specialized instruction, such as appropriately intensive research-based reading interventions, related services, supplementary aids and services, based on

peer-reviewed research to the extent practicable; accommodations and modifications, assistive technology and accessible materials are provided to students with disabilities as needed to ensure a FAPE in the LRE.  20 U.S.C. § 1414(d).  Child and parental input must be taken into account. *Id*. § 1414 (a)(1)(D), (b); 34 C.F.R. Pt. 300.

147.    All Plaintiffs and Class Members are or may be a "child with a disability" within the meaning of applicable law and need or may need special education and related services.

148.    Defendants are recipients of federal funds under the IDEA sufficient to invoke coverage under the IDEA.  20 U.S.C. § 1412(a).

149.    As set forth above, Defendants' policies and practices regarding students with disabilities constitute a persistent and systemic failure to meet the requirements of IDEA.

150.    Thus, Defendants have deprived each Plaintiff and has or may deprive the Class Members of a FAPE.

151.    As a direct and proximate result of Defendants' violations, each Plaintiff has suffered, and Class Members suffer or may suffer, irreparable harm, including substantial losses of educational opportunities.

152.    No administrative remedy exists under IDEA or its implementing regulations to address these wholesale and systemic violations by Defendants.

153.    Due to Defendants' ongoing violations of IDEA and implementing regulations, injunctive and declaratory relief are appropriate remedies.

154.    WHEREFORE, Plaintiffs and the putative Class pray for relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**Violations of Section 504, 29 U.S.C. § 794**
**34 C.F.R. Pt. 104**
**(On Behalf of All Plaintiffs, Class Members)**

155.    Plaintiffs incorporate the preceding paragraphs of this Complaint as if set forth in full herein.

156.    Section 504 provides in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a); *see* 34 C.F.R. §§ 104.4(b), .21, .43(a).

157.    Section 504 mandates that a student who is eligible for special education and related services under Section 504 is entitled to receive FAPE.  34 C.F.R. § 104.33.

158.    All Plaintiffs are and Class Members are or may be qualified individuals with disabilities within the meaning of Section 504 and are or may be otherwise qualified to participate in or receive benefits from Defendants' programs or activities.  29 U.S.C. § 794(a).

159.    Defendants have been and are a recipient of federal financial assistance sufficient to invoke the coverage of Section 504.  *Id.* § 794(b)(3).

160.    As set forth above, Defendants' policies and practices regarding students with disabilities constitute a persistent and systemic failure to meet the requirements of Section 504 and discriminate against all Plaintiffs and Class Members, solely by reason of their disability in violation of Section 504.

161.    Thus, Defendants have deprived each Plaintiff and have or may deprive Class Members of a FAPE.

162.    As a direct and proximate result of Defendants' violations, Plaintiffs have suffered, and Class Members suffer or may suffer, irreparable harm, including substantial losses of educational opportunities.

163.    Due to Defendants' ongoing violations of Section 504 and implementing regulations, injunctive and declaratory relief are appropriate remedies.

164.    WHEREFORE, Plaintiffs and the putative Class pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF
**Disability Discrimination - Violation of Title II of the ADA**
**42 U.S.C. §§ 12131, *et seq.***
**28 C.F.R. § 35.130**
**(On Behalf of All Plaintiffs, Class Members)**

165.    Plaintiffs incorporate the preceding paragraphs of this Complaint as if set forth in full herein.

166.    Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services,

1    programs, or activities of a public entity, or be subjected to discrimination by such entity." 42

2    U.S.C. § 12132; *see* 28 C.F.R. §§ 35.130(a), (b)(1)-(3), (b)(7)-(8), (d).

3        167.    Each Defendant is either a public entity subject to Title II of the ADA or an official

4    responsible for supervising the operations of a public entity subject to Title II of the ADA.  42

5    U.S.C. § 12131(1).

6        168.    All Plaintiffs are, and all Class Members are or may be, qualified individuals with

7    disabilities within the meaning of Title II of the ADA and meet the essential eligibility

8    requirements for the receipt of services, programs, or activities of Defendants.  *Id*. § 12131(2).

9        169.    As set forth above, Defendants' practices regarding students with learning

10   disabilities constitute a persistent and systemic failure to meet the requirements of Title II of the

11   ADA and discriminate against all Plaintiffs and Class Members, by reason of their disability in

12   violation of the requirements of the ADA by denying all Plaintiffs and Class Members an equal

13   and equally effective educational opportunity in the most integrated setting appropriate, and

14   instead providing all Plaintiffs and Class Members with a separate, different, and inferior

15   educational experience.

16       170.    As a direct and proximate result of Defendants' violations, Plaintiffs have suffered,

17   and Class Members suffer or may suffer, irreparable harm, including substantial losses of

18   educational opportunities.

19       171.    Due to Defendants' ongoing violations of Title II of the ADA and implementing

20   regulations, injunctive and declaratory relief are appropriate remedies.

21       172.    WHEREFORE, Plaintiffs and the putative Class pray for relief as set forth below.

22                    **ALLEGATIONS SUPPORTING DECLARATORY RELIEF**

23       173.    Plaintiffs incorporate the preceding paragraphs of this Complaint as if set forth in

24   full herein.

25       174.    As set forth above, an actual controversy has arisen and now exists between the

26   parties in that all Plaintiffs and Class Members contend, and Defendants deny, that Defendants

27   maintain practices that discriminate against students with and suspected to have disabilities and

28   deprives them of a FAPE, and that Defendants routinely fail to comply with the requirements of

FIRST AMENDED CLASS ACTION COMPLAINT
*Student A., et al. v. San Francisco Unified School District*

IDEA, 20 U.S.C. §§ 1400, *et seq*., and its implementing regulations; Section 504, 29 U.S.C. § 794, and its implementing regulations; and Title II of the ADA, 42 U.S.C. §§ 12132, *et seq*., and its implementing regulations.

175. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and act accordingly.

176. WHEREFORE, Plaintiffs and the putative Class request relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the putative Class pray for relief as follows:

(a.) An order certifying this case as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) appointing Plaintiffs as Class Representatives of the Class and their attorneys as Counsel for the Class.

(b.) Declare that Defendants' policies, procedures and practices regarding students with and who are suspected to have disabilities violate the rights of all Plaintiffs and Class Members, under IDEA, Section 504, and Title II of the ADA.

(c.) Issue preliminary and permanent injunctions pursuant to IDEA, Section 504, and the ADA that enjoin Defendants, their successors in office, agents, employees and assigns, and all persons acting in concert with them to promulgate compliant policies, procedures and practices.

(d.) Order Defendants to develop and implement a remedial plan that includes new practices, policies, and procedures to ensure that all students in the Plaintiff Class are identified and evaluated in a timely manner, and that they receive their special education services.

(e.) Order Defendants to develop and implement a policy and procedure for pro-actively notifying parents of students with disabilities of the full range of available accommodations and services that may be effective in ensuring that their children achieve progress within the meaning of applicable law and receive FAPE.

(f.)    Order that Defendants cease their policy and practice of imposing arbitrary limits and ceilings on the provision of amounts of certain types of accommodations and services thereby denying FAPE.

(g.)    Order that all SFUSD staff that provide services and accommodations to the Plaintiff Class members receive appropriate training.

(h.)    Order that Defendants' compliance with the IDEA, Section 504 and the ADA be monitored by independent experts.

(i.)    Retain jurisdiction of this case until Defendants have complied with the orders of this Court.

(j.)    Award the named Plaintiffs restitution as well as pre-judgment and post-judgment interest according to law as compensation for the out-of-pocket costs and expenses incurred by them in paying for services and accommodations provided by non-SFUSD personnel as a result of Defendants' failure and refusal to provide services and accommodations as required by applicable law.

(k.)    An order awarding Plaintiffs reasonable attorneys' fees and costs, as authorized by statute and law; and

(l.)    For such other and further relief as this Court may deem just and proper.

Date: October 25, 2019             Respectfully submitted,

*/s/ Guy B Wallace*
Guy B. Wallace
Mark T. Johnson
Travis C. Close
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

*/s/ Jinny Kim*
Jinny Kim
Alexis Alvarez
LEGAL AID AT WORK

FIRST AMENDED CLASS ACTION COMPLAINT
*Student A., et al. v. San Francisco Unified School District*

1

2                                    */s/ Shawna L. Parks*
                                     Shawna L. Parks
3                                    LAW OFFICE OF SHAWNA L. PARKS

4
                                     Counsel for Plaintiffs
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT
*Student A., et al. v. San Francisco Unified School District*