UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT A, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 19-cv-03101-WHO<br><br>**ORDER DISMISSING CASE FOR FAILURE TO EXHAUST**<br><br>Re: Dkt. No. 45 |

In this case five current or former San Francisco Unified School District (SFUSD) students sue SFUSD and its Superintendent Vincent Matthews for systemic violations and failures to provide students "with disabilities with a non-discriminatory and free appropriate public education" (FAPE) in violation of the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act of 1973 (Section 504), and the Americans with Disabilities Act of 1990 (ADA). First Amended Complaint [Dkt. No. 34] ("FAC") ¶ 1. They do not challenge official policies of SFUSD; instead, they challenge alleged practices of SFUSD that result in SFUSD failing to meet its responsibilities under the IDEA. Their claims are not limited to alleged failures with respect to specific grades, ages, school types, or to alleged failures of SFUSD with respect to students with particular types of disability. Instead, they are brought on behalf of every disabled student in San Francisco because the "special education program" at SFUSD is broken and, therefore, plaintiffs seek "a total restructuring of the entire education system as it applies to students with disabilities in San Francisco." First Amended Complaint (FAC) ¶ 1.

Plaintiffs have not pursued *any* of the available administrative remedies to exhaust their IDEA and Section 504 FAPE claims. Exhaustion would serve a number of important purposes, including: securing a detailed record about how SFUSD provides or fails to provide services to

students with *at least* the disabilities of the named plaintiffs; providing an opportunity for SFUSD to defend or explain why it met its special education duties *at least* with respect to the named plaintiffs; providing an opportunity to SFUSD to defend its program more broadly, which could provide a record regarding whether SFUSD is wholly failing disabled students across every grade level and with respect to every type of disability as alleged by plaintiffs; and finally, giving the State the opportunity to respond and step in to force SFUSD to meet its requirements if, indeed, SFUSD is systemically failing scores of disabled students across all age ranges and with all disabilities. Plaintiffs have not alleged facts showing that exhaustion should be excused for futility or facts showing that the situation at SFUSD is so dire that plaintiffs should be allowed to seek court intervention before providing SFUSD or the State of California the opportunity to fix the system.

Having given plaintiffs an opportunity to plead more facts regarding why exhaustion should be excused and why immediate court action is necessary, I agree with SFUSD that this case must be dismissed. In light of the broad scope of the relief sought compared to the few and very-limited factual allegations provided by plaintiffs that primarily concern their specific situations, exhaustion is necessary.

**BACKGROUND**

**I. PROCEDURAL BACKGROUND**

Plaintiffs filed their initial class action complaint in June 2019. SFUSD and defendant Matthews moved to dismiss, arguing that plaintiffs were required to exhaust their administrative remedies but had not done so and that the claims against Matthews were redundant of the claims against SFUSD. Dkt. No. 25. I granted that motion, recognizing that while exhaustion of the individualized due process hearing procedure through the California Office of Administrative Hearings (OAH) Special Education Division could not provide the system-wide relief sought by plaintiffs (restructuring of the entire special education program at SFUSD), it would still provide a record regarding how SFUSD was failing disabled students. *Id*. In addition, as neither side addressed whether the second method of exhaustion recognized within the Ninth Circuit – through the California Department of Education's (CDE) Complaint Resolution Process (CRP) – might

2

"be able to address the types of systemic claims raised by plaintiffs and, as a result, exhaustion should be required of that process," plaintiffs were directed to address CRP exhaustion in their amended complaint. Dkt. No. 31. Finally, I found that "[v]iewing the Complaint as a whole [] there are no facts alleged to support plaintiffs' position that any of the exceptions to the exhaustion doctrine apply." *Id*. I granted leave to amend and directed plaintiffs to include in any amended complaint "facts that plausibly support their contention that as a result of each of the [] policies or practices plaintiffs challenge, significant numbers of students are denied a FAPE. Plaintiffs shall allege facts supporting their position that exhaustion of each of the [] policy or practice claims should be excused under established Ninth Circuit or Supreme Court precedent." *Id*.

Plaintiffs filed their First Amended Complaint (FAC) on October 25, 2019. Dkt. No. 45. Defendants again move to dismiss raising the same failure to exhaust and redundant claims arguments. The matter was taken under submission following the January 15, 2020 hearing.

## II. FACTUAL BACKGROUND

Four of the plaintiffs are current or former SFUSD elementary school students and one is a current SFUSD middle school student. The plaintiffs have been diagnosed with specific learning disabilities (SLDs) of dyslexia, autism, and speech and language impairments. These five students challenge the implementation of SFUSD's duties imposed by the IDEA, Section 504, and the ADA. They allege that SFUSD fails its disabled students by: (1) failing and refusing to properly and timely identify and evaluate students who qualify for special education services (Child Find allegations), FAC ¶ 56; (2) failing and refusing to offer appropriate special educational services needed by students with disabilities, instead offering pre-set non-individualized limits on the types and duration of services and accommodations (Offer of Services allegations), *id*. ¶¶ 57-61; and (3) failing and refusing to provide special educational services to meet the needs of students by failing to employ sufficient qualified and trained staff to provide the services required by students' individualized education programs (IEPs) (Provision of Services allegations). *Id*. ¶ 62.

Each of the five plaintiffs provides examples how SFUSD failed to either timely evaluate them (Child Find allegations), offer them appropriate services (Offer of Service allegations), and/or provide them the services required by their IEPs (Provision of Services allegations). FAC

3

¶¶ 64-127. These allegations necessarily center on each plaintiff's individualized experiences, such as delays in evaluating and diagnosing their disabilities in pre-K or during elementary school. There are, however, no allegations that SFUSD violates its Child Find duties with resect to students in middle or high schools. Plaintiffs' allegations also, understandably, center on their experiences with respect SFUSD's Offer of Services and Provision of Services directed to their identified disabilities of dyslexia, autism, and speech and language impairments. There are no allegations concerning how SFUSD fails in their Offer of Services to determine IEPs or Provisions of Services required by students' IEPs for students with *other* disabilities.

In the FAC – in response my direction – plaintiffs include some system-wide allegations regarding SFUSD's failures. They allege, based on data from the California Department of Education (CDE), that "the District's enrollment is below national averages, meaning that there are hundreds to thousands of students who need services and accommodations who remain unidentified." *Id*. ¶ 51.

Plaintiffs also allege that "students who are enrolled in special education have not fared well" in SFUSD because 2018 CDE data shows that:

> 26.5% of students with disabilities failed to receive a standard high school diploma or complete their graduation requirements at an alternative school (versus 11.2% of students in the general population). Only 14.2% of students with disabilities met college readiness requirements. Notably, 5.3% of students with disabilities are suspended at least once (versus 1.9% of students in the general population). More than 20% of students with disabilities are chronically absent, i.e. absent 10% or more of the instructional days they were enrolled, (versus 11.2% of students in the general population). This number increased 20% and is more than 5% higher than the state average.

FAC ¶ 52. Plaintiffs then allege that in 2018, "districtwide proficiency scores were unacceptably low" for math and English language arts, even when measured on the California Alternate Assessment, which is designed for students with significant cognitive disabilities. *Id*. ¶ 53.

Finally, plaintiffs allege that:

> CDE has also found that the District has missed performance targets in key special education categories. The District was found to have failed to meet targets in special education in 4 year graduation rates, falling nearly 20% below the target rate; was found to have failed to meet targets to address disproportionate discipline; and was found to

4

> have failed to meet the target for acquisition of skills and knowledge within age range expectations and use of appropriate behaviors in age range expectations. The CDE also found that the District failed to determine eligibility within 60 days as required by law, missing the target by more than 20 percentage points, and failed to have timely IEPs for children transitioning from early childhood services to regular school age. Lastly, it failed to meet benchmarks for timely IEPs and timely triennials, also per the CDE's most recent published evaluation of services."

*Id.* ¶ 54.

These failures, according to plaintiffs, mean that SFUSD is failing to provide plaintiffs and thousands of other students with every sort of disability with FAPEs required by the IDEA.

## LEGAL STANDARD

### I. IDEA EXHAUSTION

#### A. OAH Process

Claims related to the provision or failure to provide a free and appropriate public education ("FAPE") under the IDEA are subject to exhaustion through the available "procedural protections for the resolution of disputes over what services must be provided. There must be an opportunity for mediation, an impartial due process hearing, and an appeals process." *Paul G. by and through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1099 (9th Cir. 2019); 20 U.S.C. § 1415(e)–(i). In California, the CDE contracts with the OAH to provide these remedies. *Id.*; *see also* Cal. Educ. Code § 56504.5(a). The OAH decision is a final administrative decision, 20 U.S.C. § 1415(i)(1)(A), and either the parent or the public agency may seek judicial review by filing a civil action in district court within 90 days. *See id.* § 1415(i)(2).

Under the IDEA, the California Department of Education (CDE), as the state educational agency ("SEA"), has general supervisory responsibility for the overall provision of special education services within California. 20 U.S.C. §§ 1412(a)(11)(A); 1401(32). The Ninth Circuit has recognized that the IDEA imposes an obligation on the CDE to directly provide services "whenever the local agency refuses or wrongfully neglects to provide a handicapped child with [FAPE]." *Doe v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986).

#### B. CRP Process

"In addition to the OAH due process hearing procedure, parents may also initiate a more

1  informal, and less adversarial, complaint resolution proceeding ('CRP')" with the CDE. *Everett H. ex rel. Havey v. Dry Creek Jt. Elementary Sch. Dist.*, 5 F. Supp. 3d 1184, 1188 (E.D. Cal. 2014); *see also* 34 C.F.R. §§ 300.151-153; Cal. Educ. Code § 56500.2; Cal. Code Regs., tit. 5, § 4650. "A CRP and the due process hearing substantially differ. Unlike the IDEA, which is limited to the identification, evaluation, placement and provision of FAPE, a CRP can contain any allegation that the [local education districted] violated the IDEA or its implementing regulations." *Everett H.*, 5 F. Supp. 3d at 1188; *see also* 34 C.F.R. § 300.153(b)(1); Cal. Educ. Code § 56500.2(c)(1); Cal. Code Regs. tit 5, § 4650(a)(7)(E). Unlike a due process hearing request, "a CRP can be initiated by any individual or organization, cannot be initiated by an [LEA] against a parent, and need not involve an allegation regarding a specific student." *Everett H.*, 5 F. Supp. 3d at 1188; *see also* 34 C.F.R. §§ 300.153(a); (b)(4); Cal. Code Regs. tit. 5, § 4600(d).

Courts in the Ninth Circuit have found that, in some circumstances, exhaustion of the individualized OAH due process hearing is not required when the CRP process has been invoked by the plaintiffs or there has been a showing that prior use of the CRP process by claimants asserting materially identical claims reveals that the CDE will not force a local education authority to change its policies or implement new practices. *See e.g., Everett H.*, 2016 WL 5661775, at *9 (E.D. Cal. Sept. 30, 2016) (identifying cases where Ninth Circuit has recognized that CRPs can suffice for exhaustion purposes); *see also Student A v. Berkeley Unified Sch. Dist.*, 17-CV-02510-JST, 2017 WL 4551514, at *4 (N.D. Cal. Oct. 12, 2017).

**II.  SECTION 504 CLAIMS SEEKING FAPE AND EXHAUSTION**

While Section 504 claims do not have an express exhaustion requirement, the Supreme Court in *Fry v. Napoleon Community Schools*, 137 S.Ct. 743 (2017), set out a test for determining when a Section 504 claim is really a denial of a FAPE claim and, therefore, subject to the IDEA exhaustion requirement. The *Fry* Court explained that a reviewing court should determine "whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination." 137 S. Ct. at 756. That comes "from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or

library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id*.

Where Section 504 claims allege and are contingent on a finding that students have been denied a FAPE, exhaustion under the IDEA is required. *Id*.; *see also Paul G.*, 933 F.3d at 1100-1101 ("The crucial issue is therefore whether the relief sought would be available under the IDEA" and IDEA exhaustion required because plaintiff "could not have brought the same claims against a public facility that was not a school, nor could an adult employee or visitor present the same grievance, because the relief [plaintiff] seeks is fundamentally educational.").

### III. EXCEPTIONS TO EXHAUSTION

There are certain circumstances where exhaustion may not be appropriate. Exhaustion may be excused when: "(1) use of the administrative process would be 'futile,' (2) the claim arises from a policy or practice 'of general applicability that is contrary to law,' or (3) it is 'improbable that adequate relief can be obtained by pursuing administrative remedies (*e.g.* the hearing officer lacks the authority to grant the relief sought).'" *Paul G.*, 933 F.3d at 1100 (quoting *Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1303-04 (9th Cir. 1992)). However, futility or inadequacy is not established simply because the body hearing the administrative appeal lacks jurisdiction to provide all or some of the relief requested. *See Paul G.*, 933 F.3d at 1002 (futility or inadequacy did not exist even though OAH did not have jurisdiction to order "structural and systemic statewide relief" because the "principal purpose of requiring administrative exhaustion, however, is to ensure the agency has had an opportunity to rule on a claim before a plaintiff goes to court," on a claim seeking both damages and injunctive relief).

Under the second exemption, a claim is systemic, and "therefore entitled to the general applicability exception, if it concerns 'the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act.'" *Paul G.*, 933 F.3d at 1101-02 (quoting *Doe v. Ariz. Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997)).

### DISCUSSION

The legal issue on this motion is fairly narrow: should plaintiffs be excused from the

IDEA's exhaustion requirement? In their FAC and in their Opposition to the motion to dismiss [Oppo., Dkt. No. 46], plaintiffs assert that exhaustion of administrative remedies is unnecessary and futile.

They give several reasons. First, because plaintiffs challenge systemic policy violations that require structural reform, exhaustion is not required under Ninth Circuit case law. Oppo. at 10-14. Second, exhaustion of the OAH process would not be useful because that process cannot address class-wide allegations or provide structural reforms. FAC ¶ 138; Oppo. at 14 (citing opinions from OAH dismissing "systemic" claims, including Section 504 claims, that were brought on behalf of other students or that seek only system-wide relief because OAH's jurisdiction extends only to considering individual claims and providing individual relief). Third, because they are challenging policies and practices of "general applicability" that are "contrary to law," exhaustion should be excused. Oppo. 15. Fourth, utilization of CRP process administered by the CDE would be "no more fruitful" because exhaustion of that process is not legally required and is also "practically ineffective." *Id*. ¶ 143; Oppo. at 16-17. Finally, exhaustion of claims under the ADA and Section 504 is not required. Oppo. at 17-19.

A couple of these arguments are easy to dispatch. Addressing plaintiffs' third argument, viewing the FAC as a whole, plaintiffs are *not* challenging policies or practices of general applicability that are contrary to law. Instead, they are challenging SFUSD's *failures* to follow its policies and failures in satisfying the mandates of the IDEA and its implementing regulations. Plaintiffs challenge SFUSD's alleged failures to meet its Child Find duties, SFUSD's failures to offer individualized services to each disabled child, and SFUSD's failures to provide the staff and resources necessary to satisfy each child's IEP. These are failures in practice, not failures of generally applicable official policies. They are also, as discussed below, issues that would benefit from the development of an administrative record.

Addressing plaintiffs' fifth argument, that exhaustion under Section 504 and the ADA is not required, plaintiffs admit that this case is about the provision of a FAPE to every disabled child in San Francisco. Oppo. at 3, 5, 10. Under *Fry*, therefore, the Section 504 claims require

exhaustion unless one of plaintiffs' other arguments for excusing exhaustion succeeds.[1] *Fry,* 137 S.Ct. at 756. I discuss the remaining arguments below.

## I. SYSTEMIC CLAIMS AND STRUCTURAL REFORM

Plaintiffs' main argument is that exhaustion should be excused because plaintiffs challenge three systemic failures (the Child Find failures, the Offer of Service failures, and the Provision of Service failures) and because they seek a complete restructuring of how special education services are delivered at SFUSD. Plaintiffs do not dispute that they have not pursued (much less exhausted) either of the two available routes for exhaustion, the OAH individualized process or the state CRP process. Instead, plaintiffs argue that exhaustion of the OAH process would be futile because they seek class-wide structural reforms that are not available through the individualized OAH process. They also argue that they should not be required to exhaust the state CRP process because that process is not required for IDEA claims and would be ineffective in any event.

Significant here, exhaustion is not excused merely because plaintiffs' challenge "systemic" policies and seek "structural reforms" not available through the OAH process. The *Hoeft* court explained that simply "[s]tructuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program formulated pursuant to these policies, however, does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement. Plaintiffs must demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement." *Id.* at 1304; *see also Paul G.*, 933 F.3d at 1101-02 (a "claim is systemic, and therefore entitled to the general applicability exception, if it concerns 'the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act.'") (quoting *Doe*, 111 F.3d at 682).

The underlying purposes of exhaustion recognized by *Hoeft* include:

---

[1] The ADA claims are inextricably intertwined with and fully duplicative of the IDEA and Section 504 claims. Plaintiffs do not argue that if the IDEA and Section 504 claims are subject to exhaustion, I should nonetheless proceed on the ADA claims.

9

> IDEA's exhaustion requirement also recognizes the traditionally strong state and local interest in education, as reflected in the statute's emphasis on state and local responsibility. The IDEA charges local educational agencies with the responsibility of establishing programs to provide disabled students with a 'free appropriate public education.' *See* 20 U.S.C. § 1414(a). At the same time, the states have primary responsibility for ensuring that local educational agencies comply with the requirements of the IDEA. *See* 20 U.S.C. §§ 1412(6), 1414(b). Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Id*. at 967 F.2d at 1303.

In *Hoeft*, the plaintiffs challenged the district's "formal, written policies and informal, de facto policies concerning extended school year services which operate to deny children with disabilities" a FAPE. *Id*. at 1299. The plaintiffs did not invoke the individualized OAH process; they started the state CRP process but did not receive a decision. The court recognized that to the extent plaintiffs challenged a policy purely as a matter of law, there was less reason to require IDEA exhaustion because "agency expertise and an administrative record are theoretically unnecessary in resolving the issue at hand." 967 F.2d at 1305. Nevertheless, despite plaintiffs' attack on a "policy," plaintiffs failed to demonstrate that exhaustion would not serve the underlying purposes of the exhaustion requirement. Plaintiffs, instead, "focuse[d] on the shortcomings of a particular component of Tucson Unified's special education program— extended school year services. The alleged violations do not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis" and there were no allegations that parents were denied administrative review because of procedural barriers or deficiencies. *Id*. at 1304.

The court also found that the various policies attacked – eligibility criteria and methodology, the extent of extended year programming provided, and procedural irregularities in parental notification – would benefit from either the individualized hearing exhaustion process or the statewide CRP complaint process. *Id*. at 1305. Finally, the court focused in particular on the fact that through the CRP process, one of the main purposes of exhaustion – giving the state the

opportunity to fix the allegedly unlawful policy – would be served. Therefore, exhaustion was required. Although plaintiffs had filed a CRP complaint, they filed their lawsuit before a decision was reached by the state department of education and therefore their case was premature. *Id*.

*Hoeft* counsels in favor of requiring exhaustion here. This case does not challenge policies of general applicability that are contrary to law; it challenges the District's failure to fully and timely provide required services. It seeks to force the District to comply with its existing policies by providing more services, more funding, and more trained staff. These are not structural reforms. As discussed in more depth below, giving the District and the State the opportunity to address plaintiffs' very broad and significant claims of District-wide failures for every child with every disability would serve many significant interests. Agency expertise that includes the defenses of SFUSD to the broad claims made by plaintiffs and the State's perspective on those defenses would be valuable to a reviewing court. It would provide the State the opportunity to fix some or all of the problems.

Plaintiffs rely on *Christopher S. ex rel. Rita S. v. Stanislaus County Off. of Educ.*, 384 F.3d 1205 (9th Cir. 2004). There, the students filed suit to challenge the district's "across-the-board" administrative decision to reduce the number of hours for autism classes due to budgetary restraints. The students did not bring IDEA claims, but instead brought Title II/ADA and Section 504 claims. The court held that the students did not have to pursue the OAH individualized due process hearing procedure because exhaustion was satisfied given one plaintiff's exhaustion of the state-level CRP process and because court adjudication of the claim would not be benefitted by any particular administrative expertise. *Christopher* S., 384 F.3d at 1213–14 ("we hold that the Students sufficiently exhausted their administrative remedies because they are challenging a blanket decision to shorten the school day for autistic students, one made outside of the IEP process; because Rita S.'s [CRP] administrative complaint put the state on notice of the issue; and because determining whether lunch and recess may be counted as instructional time in this case does not require administrative expertise."). A significant reason exhaustion was not required of the individualized process – in addition to the fact that CRP process had been exhausted and the state was on notice and had the opportunity to address the situation – was "rather than making an

11

individualized determination that any particular student could not tolerate a complete day on Tuesdays, SCOE simply set a school schedule that applied equally to all autistic students." 384 F.3d at 1211. There was no utility to requiring the plaintiffs to invoke the individualized OAH process in those circumstances.

*Christopher* S. does not help plaintiffs here. Neither the CRP nor the OAH processes have been invoked by any plaintiff. Moreover, plaintiffs are not challenging one "across-the-board" policy. Plaintiffs challenge the practices and ways in which SFUSD attempts but fails to comply with various requirements under the IDEA as applied to a range of disabled students, across every grade, in every school, and with every kind of disability. There is no evidence that California has had an opportunity to consider a challenge to SFUSD's special education program of similar breadth and scope. Neither the State nor SFUSD has had notice and an opportunity to step in, investigate, and perhaps help correct what plaintiffs allege are catastrophic failures.[2]

Plaintiffs also rely on *Morgan Hill Concerned Parents Assoc. v. California Dept. of Educ.*, 2:11-CV-3471-KJM-AC, 2013 WL 1326301 (E.D. Cal. Mar. 29, 2013). There the claim was that CDE itself had "not ensured FAPE by not complying with its monitoring, investigating, and enforcement obligations under the IDEA." *Id*. *2. Because the OAH hearing officers were not empowered to determine whether CDE itself was in or out of compliance with the California's duties under the IDEA and plaintiffs claimed the CRP process was broken, exhaustion was not required. This case is different; plaintiffs are suing the local district and do not allege procedural due process failures. In addition, while plaintiffs allege that the CDE is itself underperforming its duties (and currently operating under a consent decree), they are not suing or otherwise challenging the CDE or CRP process as the plaintiffs in the *Morgan Hill* case were.

---

[2] Plaintiffs argue that sufficient "notice" has been provided to the District, in light of a pre-litigation demand letter plaintiffs served on SFUSD back in August 2018. They contend that because SFUSD was on notice of plaintiffs' beliefs concerning system-wide failures throughout SFUSD's special education program but took no steps to remediate, exhaustion should be excused. Oppo. at 20-21. Plaintiffs provide no evidence that the State has been put on formal notice, a significant purpose of exhaustion noted in *Hoeft* and *Christopher S*. They also cite no authority that exhaustion may be excused simply because a school district received written correspondence alleging rampant deficiencies where no formal pre-litigation administrative or complaint procedures were initiated by plaintiffs.

Fundamentally, plaintiffs are not excused from exhaustion just because they repeatedly characterize their claims as challenging "systemic" problems and seeking "structural" relief. In *Doe v. Arizona Dept. of Educ.*, 111 F.3d 678 (9th Cir. 1997), the plaintiffs challenged the state's failure to provide special educational services in a juvenile jail. Plaintiffs claimed that they did not need to exhaust the claims before filing suit because they were making a "systemic challenge" to the state's failure to provide the educational services to a discrete segment of readily identifiable students. The court held that exhaustion was required because "Doe's claim does not challenge a Departmental policy that cannot be changed, so far as he and other class members are concerned, absent structural relief that only a court can order; nor does he complain of a procedural violation so serious that it effectively deprives him of an administrative forum. . . . Therefore, the problem for which Doe seeks relief is not 'systemic,' and he is not relieved of resorting to state factfinding procedures on this account." *Id*. at 683. Here, plaintiffs challenge SFUSD's failures in identifying children with disabilities, failures in providing individualized and tailored services, and failures in providing sufficient funding and staff to deliver the services required by student IEPs. None of those failures require "structural relief only a court can order." *Id*. Instead, according to plaintiffs' own pleadings, they require SFUSD to provide more funding, more resources, and a more faithful adherence to existing, actual policies not challenged by plaintiffs.[3]

Finally, in support of their exhaustion-futility argument, plaintiffs rely on cases arising outside of California where exhaustion was apparently excused. Those cases are inapposite. For example, in *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335 (3d Cir. 2003), the district court refused to dismiss IDEA claims for failure to exhaust based on allegations of a "widespread systemic breakdown of the provision of" FAPE to children because that claim "could not be addressed sufficiently in administrative proceedings." *Id*. at 343. But the Third Circuit declined to reach the exhaustion question while noting that plaintiffs had filed complaints

---

[3] As one example, plaintiffs do not really challenge the "policies" SFUSD has in place to find and evaluate children with disabilities. They instead challenge the fact that SFUSD is under-identifying children or delaying that identification under the existing policies.

13

with the state Department of Education regarding the district's alleged failures. There were forms of exhaustion attempted in that case that are not alleged here.

In *J.G. by Mrs. G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444 (2d Cir. 1987), exhaustion was excused in a class action complaint where "plaintiffs assert the deprivation of their due process rights to proper notice and hearing," and they could not therefore "be faulted for the lack of an administrative hearing and appeal." *Id*. at 447. There are no similar procedural due process failures alleged here. *See also New Mexico Ass'n for Retarded Citizens v. State of N.M.*, 678 F.2d 847, 851 (10th Cir. 1982) (excusing exhaustion based on allegations that state administrative process was deficient in terms of both "quality of relief and time lapse problems to the class."); *Jose P. v. Ambach*, 669 F.2d 865, 869 (2d Cir. 1982) (excusing exhaustion where, after years of proceedings aimed at improving services and judicial review, it was clear that "New York's administrative remedies were not adequate or speedy."); *A.A. v. Bd. of Educ., C. Islip Union Free Sch. Dist.*, 196 F. Supp. 2d 259, 262 (E.D.N.Y. 2002) (refusing to dismiss claims against state defendants charged with "failing to monitor and enforce the School District's compliance with laws regarding the education of children with disabilities" in a case pending for over six years); *New Jersey Protec. & Advoc., Inc. v. New Jersey Dept. of Educ.*, 563 F. Supp. 2d 474 (D.N.J. 2008) (claims against state defendants for failure to comply with statute's inclusion mandates and seeking relief "that required restructuring, by judicial order, of mechanism that state had in place to meet needs of students with special educational problems" did not need to be exhausted through individualized hearing process); *Easter v. D.C.*, 128 F. Supp. 3d 173, 178 (D.D.C. 2015) (excusing exhaustion where "district failed to identify a Local Education Agency responsible for students" at a particular institution, depriving students from being able to request accommodations at all); *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, 2:11-CV-04027, 2011 WL 5127850, at *1 (E.D. Pa. Oct. 31, 2011) (relying on Third Circuit authority, district court excused exhaustion where two of the named plaintiffs had started the individualized OAH process and the OAH officer admitted the relief they sought could not be provided).[4]

---

[4] Plaintiffs' reliance on *DL v. D.C.*, 450 F. Supp. 2d 11, 18 (D.D.C. 2006), is also misplaced. In that case, the district court excused exhaustion based on plaintiffs' allegations that the district

14

In sum, plaintiffs have failed to allege facts showing that exhaustion should be excused to allow them to challenge the three broad practices they attack or that the reform they seek is anything other than increased funding and greater adherence to existing policies at SFUSD. I emphasize that while plaintiffs seek a "total restructuring" of the allegedly failing SFUSD system, they have not alleged facts showing that immediate court action is necessary to prevent an incipient or ongoing emergency such that exhaustion should be excused. They have alleged troubling facts regarding the District's actions with respect to these five students with a limited set of disabilities. But there are no facts alleged in the FAC that would allow me to extrapolate from those limited facts to plausibly suggest the total failure of SFUSD's special education system across all grades and with respect to all disabilities. Those facts may exist, but plaintiffs did not allege them despite having been given an opportunity to do so.[5]

## II. UTILITY OF OAH PROCESS

While plaintiffs submit evidence that OAH hearing officers cannot provide plaintiffs the class-wide relief they seek – "a total restructuring of the entire education system" – that does not automatically excuse exhaustion in this case because there may be some utility in developing a record through the OAH process. The OAH process would, for example, provide a record regarding the specific failures of SFUSD with respect to the plaintiffs at issue, who have dyslexia and autism diagnoses, providing information why the District offered the services it did, the reasons for the alleged failures in provision of services, and what services the District could offer

---

lacked "policies and procedures" on Child Find necessary to identify, evaluate, and offer special education services to disabled pre-school children. The theory of that case is significantly narrower than the theories here. Further, the allegation there was that a policy was lacking. Here, it is implementation of policies that are challenged, which is why expertise and an administrative record would significantly assist the court.

[5] Plaintiffs complain that they need discovery to uncover more specific facts regarding SFUSD's widespread failures. Oppo. at 8-9. However, given the exhaustion requirement for IDEA and related Section 504 FAPE claims, one of the goals of which is to create a record with administrative expertise that a court can review, plaintiffs cannot simply extrapolate their individual facts to a District-wide crisis in order to avoid exhaustion of these very broad claims. The class-wide allegations that plaintiffs added in their FAC at paragraphs 51-54 show that SFUSD is failing to meet some state goals and "targets," but there are no facts comparing SFUSD with other districts (other than noting that chronic absences for disabled children in SFUSD are 5% higher than the state average) or facts that otherwise support plaintiffs' assertion that SFUSD is wholly failing all disabled students across all grades.

15

going forward. I recognize plaintiffs' persuasive authority that non-FAPE claims and claims of unequal treatment cannot be resolved through the OAH process. Oppo. at 18-19. But plaintiffs admit that this case is about the denial of FAPEs for all disabled children throughout the District due to the challenged failures of the District. Exactly how that happens and what can be done to correct those failures could be informed by exhaustion of the OAH process for some of the plaintiffs. This process could provide SFUSD the opportunity to address or rebut the allegations of failures, at least with respect to students with disabilities of similar type and severity as plaintiffs. While exhaustion of the OAH process will not get plaintiffs to the end they seek, it will provide a reviewing court with a more comprehensive record on which to move forward.

### III. UTILITY OF CRP PROCESS

Given the breadth of plaintiffs' claims regarding SFUSD's failures and their request for a restructuring of the whole special education system, the CRP process appears to be a much better fit for satisfying the exhaustion requirement. Plaintiffs are correct that there is no requirement under the IDEA to exhaust the CRP process. *See Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064 (9th Cir. 2002). However, the *Porter* court simply held that "in light of the text of the IDEA, the case law interpreting it, the Department's regulations and interpretations of them and the structure of the IDEA's enforcement scheme, we hold that the IDEA does not require exhaustion of California's CRP in addition to exhaustion of its due process procedures." (emphasis added). *Porter* did not address whether exhaustion of the CRP provided utility because plaintiffs had exhausted their individualized OAH due process hearing procedures.

In light of the allegations here, the CRP process seems designed to do exactly what plaintiffs seek; alert the CDE to the significant and continued failures of SFUSD so that the CDE can step in. Plaintiffs' evidence and allegations regarding the consent decree stemming from CDE's failure to proactively monitor school district performance (apparently separate and apart from the CRP process) does not show that exhaustion of the CRP process would be futile here. *See* Oppo. at 16-17 (citing record in *Emma C. v. Thurmond*, Case No. 96-cv-04179-VC).

Nor does this case align with the posture in *Student A v. Berkeley Unified Sch. Dist.*, 17-CV-02510-JST, 2017 WL 4551514 (N.D. Cal. Oct. 12, 2017). In that much narrower case,

plaintiffs alleged that Berkeley Unified failed to timely diagnose and provide adequate services for dyslexic students. BSUSD moved to dismiss in light of plaintiffs' failure to exhaust the individualized OAH process. There, however, plaintiffs specifically alleged that their exact claims had been presented multiple times to the CDE through the CRP process and alleged that those complaints were either ignored or rejected by CDE. Judge Tigar concluded that use of the CRP process would satisfy the administrative exhaustion requirements of an IDEA claim (and related Section 504 claim) but, "under the circumstances presented here the Court concludes that the question of exhaustion raises disputed issues of fact that cannot be resolved by a motion to dismiss." 2017 WL 4551514, at *3. Instead, Judge Tigar deferred resolving the futility question until a factual record regarding the prior-invoked CRP process could be made. *Id*. at * 4-5. Here, of course, there is no evidence that the broad claims raised by plaintiffs have ever been presented to CDE through the CRP process, much less that any of these plaintiffs has invoked that process.[6]

Similarly, in *Everett H v. Dry Creek Jt. Elementary Sch. Dist*., 2:13-CV-00889-MCE-DB, 2016 WL 5661775, at *9 (E.D. Cal. Sept. 30, 2016), plaintiffs alleged various deficiencies with their son's IEP and raised complaints with the CDE through the CRP process. The district court declined (on a motion to dismiss and again at summary judgment) to decide futility, given the dispute over whether the CRP process could or would resolve the plaintiffs' systemic claims. There, like here, the plaintiffs brought broad claims that went outside the individualized IEP process, but unlike here the plaintiffs *invoked* the CRP process and alleged facts showing that further efforts through the CRP process would be futile.

Simply put, in light of IDEA's exhaustion requirement plaintiffs need to do something to make their case and their broad allegations more concrete, and in the process develop a record containing administrative expertise as well as responses from the District or State to allow a court to effectively move forward on exhausted claims.

---

[6] During the hearing on January 15, 2020, plaintiffs' counsel asserted that the CRP process proved ineffective in each of the cases where the Ninth Circuit or district courts had excused OAH exhaustion in light of use of the CRP process. However, invoking that process here would serve the significant interest recognized in *Hoeft*, 967 F.2d at 1303, giving the State the opportunity to respond to plaintiffs' broad and troubling allegations regarding SFUSD's widespread failures.

17

## CONCLUSION

Defendants' motion to dismiss for failure to exhaust is GRANTED. As plaintiffs were given the opportunity to allege additional facts supporting excuse of the exhaustion requirement, but were unable to do so, this case is DISMISSED WITH PREJDUICE.[7]

**IT IS SO ORDERED.**

Dated: February 5, 2020

William H. Orrick
United States District Judge

---

[7] Because I have dismissed the claims in full for failure to exhaust, I need not reach the separate arguments by defendant Matthews that the claims against him should be dismissed as they are wholly redundant of the claims against SFUSD.

18